## PETER MUNDAY v. MATILDA VAIL.

A decree in equity, which is entirely aside of the issue raised in the record, is invalid, and will be treated as a nullity, even in a collateral proceeding.

This was an action of ejectment. The premises in dispute, it was admitted, had been owned by one Asa Munday, under whom both parties claimed.

On the part of the plaintiff in the court below, it was shown that on the 12th of May, 1841, the said Asa Munday, with his wife Hetty, conveyed the premises to John Conger in fee upon the following trust, to wit, "For the use and benefit of the said Asa Munday and wife, and the survivor of them, with the remainder to the children of the said Asa Munday and wife, in equal parts and shares, in fee." The plaintiff was the sole surviving issue of Asa and Hetty Munday. Asa Munday died, and on the 26th of July, 1865, Hetty Munday conveyed her interest in the premises to the plaintiff, and at the same time the trustee, John Conger, conveyed his title to her.

This was the plaintiff's case at the trial.

The defence rested on the following facts, *viz.,* that on the 16th of January, 1844, one Ephraim Munday exhibited his bill in the Court of Chancery, setting forth that he had loaned certain moneys to the said Asa Munday upon an agreement that he, said Asa, would secure said loan by a mortgage upon his land. including the premises in question,

Munday v. Vail.

and that Asa, in violation of his agreement, and in fraud of his rights, had conveyed away to John Conger all his land upon the trusts already mentioned. The bill also showed that the complainant had obtained judgment for his debt, and had loaned on his debtor's real estate. The prayer of the bill was, "that the deed of conveyance of said lands so made by the said Asa Munday and Hetty, his wife, to the said John Conger, and the said deed and declaration of trust so made and executed by the said John Conger and wife as aforesaid, may, by the order and decree of this honorable court, be set aside and declared to be fraudulent and void against the said judgment and writ of execution of your orator, and that the said judgment and execution of your orator may be decreed a lien on said lands and tenements so conveyed to said John Conger," &c.

The plaintiff in the present action, with her father and mother and John Conger, was a defendant to the chancery suit. She was then an infant, and appeared by her father as her guardian, and submitted her rights to the protection of the court. Asa Munday and his wife put in an answer denying the debt alleged to be due to the complainant, and admitting the conveyance to Conger, and setting forth it had been made on account of the bad habits of the said Asa, and from a desire to preserve his property for his family. In this suit on the 15th of December, 1846, it was decreed by Chancellor Halsted that "the said deed so as aforesaid made by the said Asa Munday and Hetty, his wife, to the said John Conger, dated, &c., is and was, from the time of the execution and delivery thereof, fraudulent, null, and void, and of no force or effect whatsoever in law or equity; and it is further ordered, adjudged, and decreed that the said deed or declaration of trust in the pleadings and proofs in this cause mentioned, &c., is and was, from the time of the execution and delivery thereof, fraudulent, null, and void, and of no force or effect whatever in law or in equity, and that the said John Conger and Asa Munday do, on service of a copy of this decree, deliver up the said deed and

declaration of trust to the complainant, to be canceled; and it is further ordered, &c., that the complainant's said judgment, &c., is and was a lien," &c.

It did not appear that any proceedings were taken under this decree, the money due the complainant being secured or paid to him.

The defence further showed that on the 10th of February, 1852, the sheriff of the county of Middlesex made him a deed of conveyance of the premises in dispute, having sold the same by virtue of a *fieri facias* issued upon a decree against the said Asa Munday for costs obtained in the Court of Chancery, on the 15th of September, 1851. He also put in proof the will of Asa Munday, devising to him all the real estate of which said Asa died seized.

The case was tried before the circuit judge, a jury being waived. From the finding in favor of the plaintiff this writ of error was brought.

The case was argued, upon errors assigned, before BEAS-LEY, CHIEF JUSTICE, and BEDLE, DALRIMPLE, and SCUDDER, Justices.

For plaintiff, *A. G. Richey.*

For defendant, *W. H. Leupp.*

BEASLEY, CHIEF JUSTICE. From the statement of facts prefatory to this opinion, it appears that Asa Munday settled his property in trust for the use of himself and wife and the survivor, for life, with remainder to his children. Asa Munday is dead, Matilda Vail, the plaintiff in the court below, being his sole issue. To her the widow and trustee released or conveyed their title and right in the premises. The defendant holds the property by virtue of a sheriff's sale, under a decree for costs against Asa Munday, made a long time after the above-mentioned deed of trust. It, therefore, is apparent that if the trust estate was existent at the time of

this sale by the sheriff, the plaintiff's title is unquestionable. The case turns upon this point. The defence claims that this deed of trust and all right under it were destroyed and annulled by the decree of the Court of Chancery, in the suit wherein Ephraim Munday was the complainant. The legal validity and effect of that decree is the point to be settled.

It is obvious, at a glance, that this decree, so far as it affects the present question, is a most extraordinary one. My respect for the court and for the counsel engaged in those proceedings, lead me to the conviction that it was the result of inadvertence. It is opposed to the well-settled practice of courts of equity and to the commonest principles of justice. This certainly is clear, when it is said that its effect is, if it have validity, to deprive an infant defendant of an estate vested in her, without an *issue* or a hearing with respect to her rights. The case made by the bill was this: the complainant alleged that he had loaned money on a promise of security in the form of a mortgage on certain land, and that the borrower, in disregard of such contract, had conveyed away such land in trust for himself and wife, for life, with remainder to his children, and he asked that such trust should be declared void with respect to his claim. No one will maintain that either the prayer of the bill or the decree founded upon these facts could properly go beyond this. The creditor had no standing to ask that the deed of trust should be annulled as between the trustee and the *cestuis que trust*. If admitted to be fraudulent with respect to creditors even, the statute of frauds ordains its validity so far as relates to the parties to it. Such, likewise, is the admitted rule in equity. But in this case the decree does, in very unambiguous language, pronounce and adjudge the conveyance in trust to be invalid, not only so far as to let in the claim of the complaining creditor, but out and out as between the trustee and the parties beneficially interested. If legal, its effect was to destroy the estates of the *cestuis que trust*, and to revert the title in fee in the settlor.

The counsel for the defence did not attempt to maintain

the propriety of such a decree, but argued that if erroneous, it could not be called in question in this collateral suit. Cases were cited to sustain this position. But these decisions are all to the effect that the judgment or decree of a court having jurisdiction over the controversy and the parties cannot be impeached for error, except in a direct proceeding for that purpose. The proposition has long since taken its place among the settled maxims of law. The only question is, whether it applies to the present case. If the Court of Chancery, in the case under review, had the power to make the decree in question, the legal rule thus invoked must prevail; but if the court had no such power, the rule is not applicable. The inquiry is, had the court jurisdiction to the extent claimed?

Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in the given case. To constitute this, there are three essentials: First. The court must have cognizance of the class of cases to which the one to be adjudged belongs. Second. The proper parties must be present. And, Third. The point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that, because A and B are parties to a suit, that a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons, by becoming suitors, do not place themselves, for all purposes, under the control of the court, and it is only over these particular interests which they choose to draw in question, that a power of judicial decision arises. If, in an ordinary foreclosure case, a man and his wife being parties, the Court of

Chancery should decree a divorce between them, it would require no argument to convince every one that such decree, so far as it attempted to affect the matrimonial relation, was void; and yet the only infirmity in such a decree would be found, upon analysis, to arise from the circumstance that the point decided was not within the substance of the pending litigation. In such a case the court would have acted within the field of its authority, and the proper parties would have been present; the single but fatal flaw having been the absence from the record of any issue on the point determined. The invalidity of such a decree does not proceed from any mere arbitrary rule, but it rests entirely on the ground of common justice. A judgment upon a matter outside of the issue must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated. And this is the principal reason why judgments become estoppels. But records or judgments are not estoppels with reference to every matter contained in them. They have such efficacy only with respect to the substance of the controversy and its essential concomitants. Thus, Lord Coke, treating of this doctrine, says: "A matter alleged that is neither traversable nor material shall not estop." *Co. Litt.* 352 *b.* And in the note to the Duchess of Kingston's case, in 2 *Smith's Lead. Cases* 535, Baron Comyn is vouched for the proposition that judgments "are conclusive as to nothing which might not have been in question, or was not material." For the same doctrine, that in order to make a decision conclusive not only the proper parties must be present, but that the court must act upon "the property according to the rights that appear" upon the record, I refer to the authority of Lord Redesdale. *Gifford* v. *Hort,* 1 *Sch. & Lef.* 408. See, also, *Gore* v. *Sackpole,* 1 *Dow.* 30; *Colclough* v. *Sterum,* 3 *Bligh R.* 186. In *Curtis* v. *Price,* 12 *Ves.* 102, Sir William Grant appears in a collateral proceeding to have looked into

a decree to see how far it had been warranted by the matters in litigation.

The case which I find most nearly in point is that of *Corwithe* v. *Griffing*, 21 *Barb.* 9. Commissioners in partition, in their distribution, embraced land other than that contained in the petition, and the court confirmed their report, and it was held that such judgment was a nullity, " as the jurisdiction was confined to the subject matter set forth and described in the petition." In this case the court had jurisdiction in cases of partition, and the decision was upon the ground that the decree was void, as it was aside from the issue which the proceedings presented.

None of these cases are directly in point, but they tend to establish the general proposition that a decree or a judgment can have no force which is not appropriate to any part of the matter in controversy before the court. In the present instance the deed of trust in question, as it regards the parties to it, was not by any one called in question ; the defendants to this chancery suit did not ask for any adjudication upon their rights, and when, consequently, the court undertook to decide and conclude such rights, such act was clearly *coram non judice*, and was consequently void. Such a decree could not impair the rights of the infant defendant who is the plaintiff in this suit ; the estate did not revert, by force of such decree, to the settlor, and the consequence is, the sale by the sheriff under the execution against such settlor, could not disturb the limitations of the trust conveyance.

The judgment must be affirmed.

BEDLE, DALRIMPLE, and SCUDDER, Justices, concurred.

CITED *in Davis* v. *Headley*, 7 *C. E. Gr.* 125 ; *Marsh* v. *Mitchell*, 11 *C. E. Gr.* 499 ; *Wilkins* v. *Kirkbride*, 12 *C. E. Gr.* 96.