SPENCER ALDRICH, PLAINTIFF IN ERROR, v. A. LOUISE PECKHAM AND RICHARD T. PECKHAM, DEFENDANTS IN ERROR.

Argued March 19, 1907—Decided November 18, 1907.

1. It is the right of a party, upon the timely presentation of a request to charge that correctly embodies the law applicable to the issues, to have such request charged by the trial court, and a violation of judicial duty in this respect is reversible error if injury could have resulted therefrom, unless the matter of such request was correctly and substantially covered by the charge in language of the court's own choosing.

2. One of the issues at the trial was whether the plaintiff, who, having become the accommodation endorser of the note in suit, paid full value for it before maturity, was a holder thereof *mala fide* by reason of matters contained in a written agreement between the maker and payee thereof, under the terms of which the note had been given. The trial court was requested by the

plaintiff to charge the jury that any agreement or contract between the payee and maker in relation to the note in question of which the plaintiff had no knowledge at the time of endorsement could not be taken into consideration by the jury. *Held*, (1) that this request was a proper instruction to be given to the jury; (2) that the matter of such request was not correctly or substantially covered by what the judge charged the jury upon this issue.

3. An accommodation endorser of a note negotiable upon its face is not legally chargeable with knowledge of the contents of a written agreement touching such note to which he is a stranger, nor with fraud in not reading such contract, unless the statements made to him at the time when his endorsement was obtained or the circumstances of the case amounted to a notification to him that the transaction in which he was about to engage involved the duty upon his part of examining such agreement.

4. The cases of *Alexander* v. *Brogley*, 34 *Vroom* 307, and *Williams* v. *Leisin*, 43 *Id.* 410, contrasted, and the principle illustrated by the former case applied.

5. Bad faith, not merely notice of suspicious circumstances, is necessary to defeat recovery by the holder of a negotiable note whose rights accrued before maturity.

6. A negotiable note is not invalidated in the hands of one taking it for value before maturity unless there be actual fraud upon his part.

On error to the Circuit Court.

On December 30th, 1901, an agreement in writing was executed between C. Austin Dall and Mrs. A. Louise Peckham by which Dall agreed to sell to Mrs. Peckham a lot of land in the town of Montclair, and "to erect thereon a dwelling-house according to plans to be agreed upon by Mrs. Peckham, the cost of which, including architect's fees, should not be less than the sum of $5,500 nor more than $6,000, said house to be completed on the 1st day of May, 1902, or as soon thereafter as possible." For the property as thus improved Mrs. Peckham agreed to pay a sum equal to the actual cost of the house plus $1,500, which last sum was to be paid by giving to Dall a promissory note at four months, to be endorsed by the husband of the maker, Richard T. Peckham. A mortgage on the said property was also to be given Dall for the exact cost of the house. The agreement also provided for the gradual extinguishment of the note in installments upon renewals, Dall agreeing to have such note discounted at bank,

and that he would "under no circumstances transfer the notes to anyone except a bank or banker for the purpose of having them discounted." On the day this agreement was signed the note for $1,500 now in suit was delivered to Dall, signed by A. Louise Peckham and endorsed by her husband. On January 15th, 1902, or thereabout, the endorsement of Spencer Aldrich was placed on this note, at the request of Dall, who stated to Aldrich that the note had been given him in payment for some property he had sold in Montclair to Mrs. Peckham, and at the same time Aldrich was shown the signature of Mrs. Peckham to a paper that Dall informed him was the contract for the sale of the property. Aldrich endorsed the note without reading the paper or seeing any other part of it. The note so endorsed was discounted by the Seventh National Bank, which, as Dall informed Aldrich, had refused to discount the paper without Aldrich's endorsement.

Two days before the maturity of this note Aldrich, upon being notified by Dall that neither he nor the Peckhams could take care of it, went to the bank with Dall, who endorsed and delivered to the bank a check for the full amount of the note and interest, drawn to his order by Aldrich, and thereupon received the note from the bank and handed it to Aldrich, who deposited it in his own bank for collection, and who later, upon the note being protested, brought this action against the Peckhams as prior endorsers. During the period between the giving of the note and this transaction with the bank Mrs. Peckham had not agreed to any plans for the construction of the house. The cost of a house to be built upon the plans furnished by the architect employed by Dall under the contract was greater than had been anticipated and more than Mrs. Peckham was willing to expend. After an amicable attempt to cut down the cost of the house, so as to bring it within the estimated price, it was agreed between Dall and the Peckhams that there should be a change of architects. When this was agreed to Dall claimed that Mrs. Peckham should pay the discharged architect for the services rendered under the contract. This Mrs. Peckham refused to do, and as Dall also refused, the matter rested there, so far as the

testimony shows.  This was the situation when the note that the plaintiff had endorsed was taken up by his check and duly protested for him.  The action brought on this note against prior endorsers resulted in a verdict for the defendants, under a charge of the trial court, in which the jury was instructed: "The plaintiff is entitled to recover unless you find that he had either knowledge of fraud, bad faith in the inception of the note, or knowledge of such circumstances as would lead him, as an intelligent man, to infer that such was the fact. If you find that to be the case, that he had such notice before he parted with his money, his title is bad and he cannot recover.  If you find that he took the note without either actual knowledge or due notice of any original infirmity in the inception, the origination, of the note, then he is entitled to recover all that he paid, and that is the whole amount, with interest."  The plaintiff below submitted to the trial court two requests to charge, which were denied, excepting as thus charged, and bills of exceptions duly sealed.  These requests were: *First.* "Any agreement or contract between C. A. Dall and the defendants in relation to the note in question, of which the plaintiff had no knowledge at the time of endorsement, cannot be taken into consideration by the jury." *Second.* "If the plaintiff, for value, and before maturity of said note, became the legal holder of same, he is entitled to recover full amount from the defendants."  Error is assigned upon the refusal of the court to charge these requests severally.

For the plaintiff in error, *R. Arthur Heller* and *Harry V. Osborne.*

For the defendants in error, *Hugh V. Reed.*

The opinion of the court was delivered by

GARRISON, J.  The first request was a proper instruction, and one that, in view of the admission in evidence of the agreement between the maker and the payee of the note, was essential to the correct determination of the plaintiff's rights either as endorser of the note or as its holder before maturity.

The refusal of the trial court to charge this request was injurious, and hence reversible error, unless the legal effect of the request was substantially and correctly covered by what the court said in its charge to the jury.　11 *Encycl. Pl. & Pr.* 214.

What the court said to the jury touching the issue to which this request was pertinent is given in full in the prefatory statement of facts.

That the instruction thus given was not a substantial compliance with the plaintiff's request appears from the following considerations: In the first place, the charge makes no mention at all of the agreement.　It is, however, only upon the assumption that the plaintiff was chargeable with knowledge of what was in that agreement that the question of bad faith was imported into the case.　The request, moreover, dealt properly with the legal effect of the plaintiff's lack of knowledge of the contents of the agreement at the period of time when he endorsed the note, whereas the charge directs the attention of the jury to the plaintiff's knowledge or notice of bad faith not at such period of time, but at the inception of the note.

The charge also incorrectly treated the plaintiff's knowledge of "such circumstances as would lead him, as an intelligent man, to infer" fraud as the equivalent of bad faith. This instruction is not sanctioned by the rule laid down in *Hamilton* v. *Vought,* 5 *Vroom* 187, and the many cases that follow that decision; in fact, this feature of the present charge is substantially the same as the judicial instruction that was reprobated in the opinion referred to.　The correct rule, as tersely stated by Mr. Justice Dixon, in *Read* v. *Abbott,* 16 *Id.* 303, is: "Bad faith, not merely notice of suspicious circumstances, is necessary to defeat recovery." *Laubach* v. *Pursell,* 6 *Id.* 434; *Armour* v. *McMichael,* 7 *Id.* 92; *National Bank of the Republic* v. *Young, Receiver,* 14 *Stew. Eq.* 531; *Fifth Ward Savings Bank* v. *First National Bank* 19 *Vroom* 513; *Hebberd* v. *Southwestern L. & C. Co.,* 10 *Dick. Ch. Rep.* 18.

It should be remarked in passing that at the time the note

in suit was given the Negotiable Instrument act, approved in April, 1902, was not in effect.

Quite apart, however, from these criticisms the charge is, in other respects, both inadequate as a substitute for the plaintiff's request and erroneous in point of law. Bearing in mind that the claim of fraud in this case springs entirely from the circumstance that the agreement between Dall and Mrs. Peckham was brought to the plaintiff's attention when he endorsed the note, the only legal theory of fraud to be deduced from the general language employed in the charge is that the plaintiff either actually read the agreement, or that if he did not he ought to have done so, and hence, in either event, is to be charged with so much of its contents as bore upon the negotiable qualities of the note and upon the consideration upon which it was given, and further, that being charged with this knowledge, the inquiry which it was the plaintiff's duty to institute would have elicited the fact as to the then *status* of the building operation between the original parties to the agreement, and that if the plaintiff, with the knowledge thus acquired, endorsed the note, he did so in bad faith, which was a fraud upon its maker.

Not one of the propositions, however, contained in this theorem will stand the test of examination. The testimony is that the plaintiff did not read the agreement or know what it contained, hence if he is to be charged with such knowledge, it must be by force of legal imputation resulting from the fact that he ought to have read it—that is, that his failure to read the contract was evidence of fraud. This contention rests upon the hypothesis that it was legally incumbent upon the plaintiff to read the agreement. The law, however, is otherwise. In the case of *Alexander* v. *Brogley,* 34 *Vroom* 307, decided in this court, it was held that the signatures of the defendants, although affixed to a written contract, did not charge them with knowledge of its contents, or even with knowledge of the fact that they were signing a contract, in view of the representations made to them at the time their signatures were obtained. In the later case of *Williams* v. *Leisin,* 43 *Id.* 410, in which the defendant was charged with

knowledge of the contents of an agreement that he had signed, Mr. Justice Dixon, who had delivered the opinion in Alexander *v.* Brogley, points out that the distinction between the two cases lies in the circumstance that in the earlier case the statements made to the defendants involved no duty upon their part to examine the paper in question, whereas in the latter case the statement made to the defendant amounted to a notification in respect to the writing in that case that directly involved the duty of examination. The principle elucidated by these cases applies to the situation disclosed by the testimony in the present case, since it cannot be said that a higher duty exists with respect to a writing that is at most collateral than that which exists with respect to the document a person is actually signing. The testimony in the present case is that when Dall requested the plaintiff to endorse Mrs. Peckham's note for discount he stated to him that he had obtained the note in payment for some property in Montclair that he had sold to Mrs. Peckham, the maker of the note, and that in this connection he showed the plaintiff the signature of Mrs. Peckham to a paper, which he stated was the contract of sale. There being nothing in this statement that notified the plaintiff that the paper contained any limitation upon the negotiable quality of the note that he was requested to endorse, he was under no duty to read the contract or to acquaint himself with its contents. Even assuming that the plaintiff was negligent in not reading what he was told was the contract of sale, such negligence would not rise to the dignity of fraud.

Even if it be conceded that it was the plaintiff's duty to read the contract signed by Mrs. Peckham, or, to put it more strongly still, that in fact he did read it, there is nothing in that contract that even tends to impute fraud to him in endorsing the note that had been given to Dall under its terms. The agreement expressly provided that the note, when received by Dall, should be discounted at a bank, the only duty assumed by him being that he would not transfer the note except for the purpose of bank discount. The sole object of the plaintiff's accommodation endorsement of the note was to have it discounted at a bank that had agreed to discount the

note if the plaintiff would endorse it. The endorsement of the note was therefore not within the restriction of the agreement, assuming that the negotiability of the note could be thus restricted, but, on the contrary, was within the express object for which the note was given.

If we go even further, and assume that the plaintiff not only read the contract, but that he also ascertained the precise *status* of the building operation contemplated by it, there was nothing in that *status* to render fraudulent the plaintiff's endorsement of the note. Upon this hypothesis the plaintiff would have seen from the contract itself that the consideration of the note was the agreement of Dall to improve the property at the expense of Mrs. Peckham and according to plans to be agreed upon by her. He would have seen that the completion of such improvements was not a condition precedent to the giving of the note, and that the time of the completion of such building was not of the essence of the contract, but, on the contrary, that both depended upon Mrs. Peckham's reaching an agreement as to the plans. He would have become informed that Mrs. Peckham, up to that time, had not agreed upon any plans for the improvement of the lot that came within the sum she was willing to expend for that purpose, and that she and Dall were then at odds over the payment of an architect's bill. All of this simply left Dall's agreement to improve the lot unperformed. It was not, however, Dall's performance of his agreement to improve the lot that was the consideration for the giving of the note, but his agreement to improve. For all that appeared in the case, this agreement was unaffected by the delay of Mrs. Peckham in reaching a conclusion as to the plans for her house, or in refusing to pay the bill of the architect.

Upon these several considerations our conclusion is that the charge, which was in the foregoing respects incorrect and erroneous, was not a substantial compliance with the plaintiff's proper request, and hence that the refusal to charge such request was reversible error.

The second request of the plaintiff, namely, "If the plaintiff, for value, and before maturity of said note, became

the legal holder of same, he is entitled to recover full amount from the defendants herein," should also have been charged. It was a correct statement of the legal *status* of the holder of a note before maturity, which the plaintiff was, according to the undisputed testimony, for when Dall received the note from the bank in exchange for the check the plaintiff had drawn to his order, and turned the note over to the plaintiff as part of a single transaction, the only rational explanation of such transaction is that Dall was acting for the plaintiff in paying to the bank the price of the note with the plaintiff's money. In such a transaction the knowledge possessed by the plaintiff of the agreement between the parties to the note, and the *status* of such parties with respect to the performance thereof, is an immaterial circumstance. *National Bank* v. *Hewitt,* 30 *Vroom* 57.

The charge of the trial court, for reasons that have already been stated, did not adequately cover the legal proposition correctly embodied in this request.

Whether a verdict should have been directed for the plaintiff cannot now be definitely decided, since a motion for such direction was not made at the trial.

The plaintiff, upon the errors assigned, is entitled to a *venire de novo,* and to that end the judgment of the Circuit Court is reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Hendrickson, Pitney, Swayze, Reed, Trenchard, Bogert, Vredenburgh, Green, Gray, Dill, J.J.   13.