Richard C. **NONGARD**, Tuthill Ketcham and Rowland H. Murray, individually and as partners, trading as Ketcham & Nongard, Plaintiffs,

v.

**BURLINGTON COUNTY BRIDGE COMMISSION**, a body politic, David J. Connelly and William H. Wells as Receivers, Defendants.

Civ. A. No. 1144–52.

United States District Court
D. New Jersey.

June 29, 1955.

Robert L. Hood, Newark, N. J., Thomas D. Begley, Burlington, N. J., Van Riper & Belmont, by Walter D. Van Riper, Newark, N. J., for the motion.

Vincent L. Gallaher, Camden, N. J., Thomas C. Egan, Philadelphia, Pa., contra.

FORMAN, Chief Judge.

The plaintiffs in this action are Richard C. Nongard, Tuthill Ketcham and Rowland H. Murray, all of Chicago, Illinois, individually, and as partners trading as Ketcham and Nongard. The defendants are the Burlington County Bridge Commission, a public body corporate and politic of the State of New Jersey, and David J. Connolly and William H. Wells, of New Jersey, Receivers appointed by the Superior Court of New Jersey, to collect judgments entered in the case of Driscoll v. Burlington-Bristol Bridge Co., 10 N.J.Super. 545, 77 A.2d 555, as modified in 8 N.J. 433, 86 A.2d 201.

In the first count of their complaint the plaintiffs allege that the jurisdiction of the court over the action is founded on diversity of citizenship and the existence of a federal question arising under the 14th Amendment of the Constitution of the United States, Section 1, and that the amount in controversy exceeds $3,000. They further allege that an actual controversy exists between the parties and they sue to secure a declaration of plaintiffs' rights and "legal relationships" with respect to the matter in controversy under Sections 2201 and 2202 of Title 28 U.S.C. (the Declaratory Judgment Act) and for other relief.

They also recite in the first count of their complaint that in December 1946 they engaged with others in a commitment to purchase all of the stock outstanding of the Burlington-Bristol Bridge Company which owned a toll bridge over the Delaware River between Burlington, New Jersey and Bristol, Pennsylvania; that in October of 1947 the purchase was completed and that on October 22, 1948, the Burlington-Bristol Bridge Company became the owner of all of the outstanding stock of Tacony-Palmyra Bridge Company which owned a bridge across the Delaware River between Palmyra, New Jersey and Tacony, Pennsylvania; that on that day their group sold to the defendant, the Burlington County Bridge Commission, all of the stock for $12,000,000, which was financed by the issuance by the Bridge Commission of $12,400,000 of bonds which the plaintiffs' partnership, Ketcham and Nongard, purchased, granting to B. J. Van Ingen & Co., Inc., a one-half interest therein; that they financed the transaction by borrowing from the Chemical Bank and Trust Company of New York the sum of $12,422,866.40, for which they pledged the bonds they acquired; that thereafter they formed a syndicate of investment dealers as underwriters to purchase and distribute the bonds of the Bridge Commission hypothecated with the Chemical Bank and Trust Company; that the loan of the Bank to Ketcham and Nongard and B. J. Van Ingen & Co., Inc. was cancelled with the proceeds of a new loan to the Bond Syndicate and the entire issue of the bonds was pledged for that loan; that in said transaction the plaintiffs' partnership, Ketcham and Nongard, advanced and loaned to the Bridge Commission the sum of $1,240,000 which loan was represented by bonds of the defendant Bridge Commission in the same amount of $1,240,000; that on December 3, 1948, a civil action was commenced in the Chancery Division of the Superior Court of New Jersey

against the plaintiffs and others to rescind the said sale; that on December 29, 1950, the said Court gave a final judgment holding that the sale of said stock should be rescinded and ordered the Commission to return the bridges to the Burlington-Bristol Bridge Company and the members of the plaintiffs' group to return $3,050,347 less a sum paid by them which had inured to the benefit of the bondholders; that it was further held that the bondholders were subrogated to the rights of the mortgage or other lienholders to the extent that the money was used to discharge the same; that a lien should be granted on all revenues of the bridges until the aforesaid bonds shall be repaid; that the State of New Jersey had the right to acquire the bridges under applicable statutes and that receivers should be appointed to collect the judgments; that on review of the said judgment by the New Jersey Supreme Court, on January 21, 1952 the judgment of the Superior Court was modified, among other things, in the following respects: that the Bridge Commission should retain title to the bridges; that the plaintiffs' group should repay to the Bridge Commission the gross sum of $3,050,347, received by them with interest from October 22, 1948, without deduction therefrom of legitimate expenses and set-offs which inured to the benefit of all the bondholders; that the obligation to repay the sum was made joint and several as to plaintiffs, Tuthill Ketcham and Richard C. Nongard and others, but was made several as against still other remaining members of the original syndicate in the amount which each had respectively received; that Ketcham and Nongard were declared not holders in due course and that the bonds that evidenced the loan made by the plaintiffs to the Bridge Commission in the sum of $1,240,000 were null and void except to the extent that the Chemical Bank and Trust Company had an interest therein as pledgee; and that to the extent that the Bridge Commission might be required by the Chemical Bank and Trust

Company as a pledgee in due course to pay the amount due on the said bonds, the Bridge Commission would be subrogated to the rights of the Bank against Ketcham and Nongard; that by requiring the members of plaintiffs' group to return the moneys received by them to the Bridge Commission, yet decreeing that the Bridge Commission should retain title to the bridges, constituted a confiscation and condemnation of their property for public use without just compensation and that therefore the said judgment is void as the unlawful taking of property without due process of law, in violation of the 14th Amendment to the Constitution of the United States, Section 1, and contrary to the Constitution of the State of New Jersey, Article 1, par. 20 and to the statutes of the State of New Jersey, namely, R.S. 20:1–1 et seq., N.J.S.A. R.S. 48:5–13 et seq, N.J.S.A.; that the opinion and judgment of the Supreme Court was not responsive to the pleadings and appeal papers and could not have been foreseen by the plaintiffs; that the Supreme Court of New Jersey did not act as a court of review but as a court of original jurisdiction and that even though the plaintiffs and others petitioned for review, they had no notice that the court would consider taking and confiscating their bridges without affirming the aforesaid sale or providing them with an opportunity to present evidence and to be heard, as is required in in rem proceedings, and thus were denied an opportunity to object to the action of the court; that the declaration by the Supreme Court that the bonds in the sum of $1,240,000 held by plaintiffs, Ketcham and Nongard, evidencing the loan made by the plaintiffs to the Bridge Commission, were null and void, without making provision for the repayment to Ketcham and Nongard for the consideration paid for said bonds although the plaintiffs in the aforesaid action of Driscoll v. Burlington-Bristol Bridge Co., admitted that the plaintiffs herein had put up their own money for said bonds and that they were entitled to recover for the same, was a

confiscation of the property of the plaintiffs for the benefit of a public agency without just compensation; that the petition of plaintiffs' group for a rehearing by the Supreme Court was denied, as was a petition for certiorari to the United States Supreme Court. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652.

The prayer of the plaintiffs on the first count is (1) for a declaratory judgment to the effect that the adjudication of the Supreme Court of New Jersey on January 21, 1952, and the judgment of the Superior Court pursuant thereto, are wholly invalid and void; (2) that the defendant be restrained from taking any proceedings for the collection of the judgment; and (3) for other relief.

In the second count of their complaint the plaintiffs repeat the jurisdictional and background allegations contained in the first count and charge that although on October 27, 1948, the plaintiffs loaned $1,240,000 and the defendant Bridge Commission received it and benefited thereby, it has refused to honor the said bonds on the ground that they are null and void and has refused to return to the plaintiffs the money, wrongfully retaining it and thereby unjustly enriching itself; wherefor the plaintiffs demand judgment against the Bridge Commission in the sum of $1,240,000 with interest from October 27, 1948.

In the third count of their complaint the plaintiffs again repeat the jurisdictional and background allegations contained in the first count and charge that although the plaintiffs paid for bonds in the sum of $1,240,000 and although the Bridge Commission received the money, it has failed to deliver valid bonds therefor or to return the said sum of $1,240,-000 paid by them for said bonds, causing a failure of consideration, by reason of which the plaintiffs demand judgment against the Bridge Commission in the sum of $1,240,000 together with interest from October 27, 1948.

The defendant receivers, Connolly and Wells, answered denying, among other things, the loan or payment to the Bridge Commission in the sum of $1,240,000. The Bridge Commission in its answer admitted, among other things, that the plaintiffs had purchased bonds from it and paid therefor the sum of $1,240,000, but denied liability to deliver the bonds or return the money.

All of the defendants moved to dismiss plaintiffs' action on the ground that all the matters and issues raised in this action had been settled and rendered moot by the proceedings brought in the Superior Court of New Jersey and finally determined by the New Jersey Supreme Court by its opinion modifying the judgment of the Superior Court (as heretofore mentioned). They also moved for a summary judgment upon the ground that there is no genuine issue of fact and the defendants are entitled to judgment as a matter of law.

The motions were heard upon affidavits, briefs and oral argument of the parties.

The plaintiffs resist the motions on the ground that the Supreme Court of New Jersey decided issues not presented to it, constituting a condemnation of the private property of the plaintiffs for public use without just compensation, and that the judgment entered pursuant to its action was violative of the 14th Amendment to the Constitution of the United States.

The plaintiffs contend that the Supreme Court of New Jersey "changed the cause of action, in effect from one of recision to a suit for the proceeds of a sale in breach of trust" and that they had no notice that the theory of the cause of action brought by the plaintiffs against them, or the remedy, would be changed. Consequently they had no opportunity to present evidence against the new cause of action or to minimize the damages to be assessed against them. They argue that they could have shown that the true value of the bridges was $13,000,000 and that the New Jersey Supreme Court arbitrarily assumed as accurate the estimate of the plaintiffs in the suit in the state court that the bridges were worth

only $5,000,000. These actions by the New Jersey Supreme Court they submit resulted in a confiscation of the property of the plaintiffs for public use in violation of the constitutional rights of the plaintiffs.

The plaintiffs cited a number of cases as authority for their propositions:

(1) That a judgment is void and can be collaterally attacked where the court goes beyond the issues presented to it, Munday v. Vail, 1871, 34 N.J.L. 418; Reynolds v. Stockton, 1891, 140 U.S. 254, 11 S.Ct. 773, 35 L.Ed. 464; Eisenlohr, Inc., v. Kalodner, 3 Cir., 1944, 145 F.2d 316; Windsor v. McVeigh, 1876, 93 U.S. 274, 23 L.Ed. 914;

(2) That a decree in so far as it undertakes to decide issues not made by the pleadings is void and a court is without jurisdiction to pass upon questions not submitted to it for decision, Osage Oil & Refining Co. v. Continental Oil Co., 10 Cir., 1929, 34 F.2d 585;

(3) That a federal court can enjoin a judgment obtained in a state court in circumstances where its enforcement will be contrary to recognize principles of equity and the standards of good conscience, Wells Fargo & Co. v. Taylor, 1920, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205, citing Marshall v. Holmes, 1891, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870;

(4) That there can be no recision unless there is a return to status quo, Russell v. Russell, 1901, 63 N.J.Eq. 282, 49 A. 1081, and a number of other subordinate propositions and authorities.

That the authorities cited support the propositions of law suggested by the plaintiffs is not to be gainsaid. The question is whether this case comes within those general propositions of law. In its opinion the Supreme Court of New Jersey, after declining to rescind the purchase of the bridges and to return them to private ownership, as directed by the trial court, and also after rejecting the proposal that a conditional or delayed recision be provided by permitting title to the bridges to be left in the Bridge Commission until sufficient funds were available to retire the bonds, at which time the bridges should be returned to their former owners, concluded that all of the equities disclosed in the case would be served best by the following course:

"The third alternative, which we conceive to be the most equitable and practical one in the circumstances, is to leave the title to the bridges in the bridge commission subject to the supervision of the court so that its members will not again be able to violate their trust. The bridge commission will then be permitted to meet its obligations to the holders in due course of its bonds and the public will be assured of having the bridges toll free at the earliest possible date. Even this procedure has its inequities, for by leaving the title to the bridges in the bridge commission the public will have been deprived of its right under the state and federal statutory formulas to acquire the bridges at a substantially lower price. During the course of the trial of this action, however, the plaintiffs elected to proceed on the theory of rescission alone and waived their claim against the members of the selling syndicate for $7,400,-000 in damages (the difference between the $12,400,000 of bonds issued and an estimated condemnation price of $5,000,000) which they had made in their amended complaint. This waiver was relied upon by the defendants in determining what witnesses to call in their defense and accordingly is binding on us as well as on the court below and prevents any assessment of damages based on the amended complaint against the selling syndicate. This waiver does not preclude us, however, from requiring the members of the selling syndicate over whom the court acquired jurisdiction to disgorge the profits which they received from this illegal transaction. Where rescission is prayed for and is warranted by the facts, but cannot be decreed because of the intervening equities

of innocent third parties such as the bondholders here, under general principles of equity the court may require the wrongdoers to account for their profits so that as nearly as may be the parties will be protected and equity done, [cases cited]. Moreover, where as here the wrongdoers have conspired together to reap a profit out of a fraudulent transaction they are jointly and severally liable and it is not necessary even that they all be before the court in order to grant complete relief, see Bigelow v. Old Dominion Copper, etc., Co., 74 N.J.Eq. 457, 498, 71 A. 153 (Ch.1908). The members of the selling syndicate must make restitution of that which they have received, for otherwise they will be unjustly enriched by their fraud at the expense of the public. They and their nominees are therefore liable to repay the $3,050,347 gross profit which they received for their stock as the result of this transaction and they are not entitled to any credit for the expenses incurred in effectuating the fraudulent scheme, for none of those expenses can rightly be said to have been of benefit to the bridge commission or the public it represents. Bell, Hanff, Ketcham, Nongard and Powell were the members of the selling syndicate who took an active part in consummating the sale and so we are of the opinion that they are the only ones who should be held both jointly and severally liable for the entire amount of the illegal profits. The remaining persons who as stockholders of the Burlington-Bristol Bridge Company shared in the profits are severally liable only for that which they each received. In the instant case the members of the selling syndicate cannot complain that complete rescission and restoration of the status quo cannot be made, for the circumstances which prevent such relief are entirely of their own making. They are hoist with their own petard." 8 N.J. at page 498–500, 86 A.2d at page 233.

It is true, as plaintiffs assert, that the complaint in the state court action sought a recision and sale of the bridges and that it was amended to include a prayer for damages and during the course of the trial the plaintiffs herein waived their right to damages. It is likewise true that the relief granted by the New Jersey Supreme Court differed from that granted by the Superior Court of New Jersey.

The suit in the state court was an action in equity. The plaintiffs in that case, the Governor and the Attorney General, were suing to protect equitable rights of the State of New Jersey. Plaintiffs herein were defendants in the suit in which the state courts had jurisdiction over the parties and the subject matter. The Supreme Court of New Jersey viewed the litigation in its equitable light giving relief to the plaintiffs therein and at the same time protecting the equitable rights of purchasers of bonds who acted in good faith. It found that the plaintiffs herein had participated in an illegal transaction, that their profits therefrom, together with those of others who acted in like manner with them, should be disgorged, and that while bondholders who were innocent third parties should have their bonds protected, those held by the plaintiffs should be considered as tainted and not so protected.

The position of the plaintiffs with relation to their holding of bonds is characterized by the court in the following language:

"The Chemical Bank and all participants in the bond syndicate, with the exception of Ketcham and Nongard, are holders in due course. As such holders, they and those claiming under them are entitled to enforce the bonds held by them to the extent of their interest therein and according to the terms thereof. Ketcham and Nongard as active participants in the illegal transaction are not holders in due course

and the bonds held by them are null and void, except to the extent that the Chemical Bank has an interest therein as pledgee. In the event and to the extent that the Chemical Bank exercises its rights in the bonds as pledgee so that either principal or interest are paid thereon by the bridge commission, the bridge commission shall be subrogated to all the rights of the Chemical Bank against Ketcham and Nongard arising out of the note of the bond syndicate which the bonds were pledged to secure.

\* \* \* \* \* \*

"To the extent that the members of the selling syndicate or their nominees have an interest therein, the entire transaction in all its ramifications is rescinded and they shall repay to the bridge commission the sum of $3,050,347 which represents the gross profit which they received from the sale of their stock in the Burlington-Bristol Bridge Company. The obligation to repay this sum shall be both joint and several as to Bell, Hanff, Ketcham, Nongard and Powell, but shall be several only as against the remaining sellers in the amounts they each received, specifically: Rowland H. Murray—$76,258.-68; Thomas J. Christensen—$305,-034.70; Irene E. Powell—$122,013.-88; Paul A. Powell—$122,013.88; Mildred P. Meader, $122,013.88; Rickard W. Parks and Gladys A. Parks—$129,939.75. Judgment in the sums indicated, together with interest thereon from October 22, 1948, will accordingly be entered against these defendants and in favor of the bridge commission." 8 N.J. at page 501, 86 A.2d at page 234.

The arguments of the plaintiffs that they are in a position as if the Supreme Court had departed from the issues raised in the case and had imprisoned them or fined them is without merit. They were not, as in many of the cases cited by them, in the position of having their rights cut off under no issue raised before the court; as in Munday v. Vail, supra, analyzed and approved in Reynolds v. Stockton, supra. Neither were they unserved defendants against whom void judgments had been taken in state courts who sought relief against said judgments in federal courts, as in their cited cases of Marshall v. Holmes, supra, and Atchison, T. & S. F. R. Co. v. Wells, 1924, 265 U.S. 101, 44 S.Ct. 469, 68 L.Ed. 928. Nor were they, as in the cited case of Windsor v. McVeigh, supra, in the situation of the respondent to a forfeiture action commenced in the Federal Court of Virginia under a statute of 1862 who was commanded by process of monition to appear and answer, and when he did so at the designated time, on motion of the district attorney, his appearance and answer was stricken because he was "a resident within the City of Richmond, within the Confederate lines, and a rebel."

Other cases referred to by the plaintiffs are found equally inapposite. Every substantial issue mentioned by them in this suit was either raised by them before the trial court or could have been raised. The fact that the New Jersey Supreme Court resolved those issues by measures of relief which differed from those adopted by the Superior Court did not deprive the plaintiffs of their due process. Surely that they regard the relief granted by the New Jersey Supreme Court in its determination of equities before it as bearing upon them with too harsh impact cannot be a ground for an inferior federal court to measure the judgment of the highest tribunal of a state.

There can be no disagreement with plaintiffs' submission that the refusal of the United States Supreme Court to review the decision of a state's highest court does not constitute a decision upon the merits so as to bar a United States District Court from entertaining a suit before it. But the circumstances that permit such recourse must be extraordinary. In Williams v. Tooke, 5

Cir., 1940, 108 F.2d 758, 759, the complaint alleged numerous errors committed by the Texas courts dealing with the case and that they deliberately, intentionally, arbitrarily and capriciously discriminated against the plaintiffs and refused to award them relief, and that the State of Texas acting by its judicial departments, in effect, took plaintiffs' property and gave it to the defendants without consideration and without due process of law in violation of the 14th Amendment of the Constitution of the United States. In affirming a decision adverse to the plaintiffs by the United States District Court for the Eastern District of Texas, the Court of Appeals of the Fifth Circuit said:

"If all the judgments complained of were merely erroneous that would not amount to a denial of due process of law. [Cases cited]. However, if a case between private parties is arbitrarily and capriciously decided, in violation of settled principles of law and contrary to undisputed facts, though the court so deciding had jurisdiction over the suit, the judgment may be in violation of the 14th Amendment. [Cases cited]. But that does not help appellant in this case. We are dealing solely with the jurisdiction of the District Court. The purpose of the suit is clearly to seek a review of the decisions of the Texas courts and the reversal of those decisions for error. The jurisdiction of the District Court is strictly original. It has no jurisdiction to reverse or modify the judgment of a state court. The errors complained of could be reviewed only by the Supreme Court. [Cases cited]. It was the duty of the District Court to dismiss the suit. 28 U.S.C.A. § 80.

"The judgment is affirmed." At page 759.

And in Moffett v. Robbins, 10 Cir., 1936, 81 F.2d 431, 435, the Court said:

"It is well settled that a final judgment rendered by a court having jurisdiction of the subject-matter and parties is conclusive upon the parties and those in privity with them in a subsequent action upon the same cause of action as to all matters in fact actually litigated or which might have been litigated therein; and such a judgment operates as an estoppel between the same parties in a subsequent proceeding upon a different cause of action only with respect to the matters actually litigated and adjudicated. That ancient rule applies even though the judgment may have been erroneous in fact or law, or both. [Cases cited]. It is equally well settled by the decisions of this court and others that a United States court cannot vacate a judgment or decree of a state court, nor mandate that court to do so. Folk v. Monsell, 10 Cir., 71 F.2d 816. It may, however, restrain a successful litigant from enjoying the fruits of a judgment fraudulently obtained in a state court if the requisite elements of federal and equity jurisdiction exist. In doing so the court does not act in review of the judgment, nor is it concerned with irregularities occurring in the proceedings in the state court. It considers the conduct of the successful party there and if it is found that he committed fraud in securing the judgment, he is prevented from enjoying its benefits. The restraint acts upon the party and does not affect the judgment. [Cases cited]. But such relief will be granted only upon fraud extrinsic to the matters tried and determined by the other court and which caused the court to render a wrong judgment, such as the successful party through fraud or deception preventing the unsuccessful from presenting his case, or from attending the trial, or where his attorney was induced to betray his client's interest, or other chicanery of that kind. The submission of perjured testimony or a fraudulent instrument on which the

judgment rests is not enough, because a matter of that kind is necessarily intrinsic the proceedings. [Cases cited]. In order to come within the rule, it must appear by clear allegations of fact that the party asserting it had a valid defense to the cause of action on which the judgment was rendered; that he was prevented by extrinsic fraud, accident, mistake, concealment, or other chicanery from presenting such defense, and that he had not been negligent in availing himself of it. [Cases cited.] At page 435.

■ Manifestly the complaint in the state court raised issues inviting the application of broad equitable relief. The relief contrived by the New Jersey Supreme Court was well within the complaint and the proofs considering all of the circumstances they encompassed, as is exhaustively demonstrated in the opinion of the New Jersey Supreme Court. The charge of the plaintiffs here that the New Jersey Supreme Court acted as a court of original jurisdiction and rendered a judgment against them not responsive to the pleadings, thus preventing them from defending themselves and unconstitutionally depriving them of their day in court, is without foundation because the issues as to the propriety of their profits and the validity of their bonds were before the court and were thoroughly litigated and finally adjudicated. Their charges furnish no basis for review here.[1]

The plaintiffs urge that in the event that the judgment of the New Jersey Supreme Court is not determined to be a nullity then judgment should be granted in their favor in the sum of $1,240,000 against the Bridge Commission under the second and third counts of their complaint, for money had and received by it for which no valid bonds have been delivered, or for money loaned by the plaintiffs. They seek to support this view with the argument, among others, that nowhere in its opinion did the New Jersey Supreme Court state that the plaintiffs were not entitled to the money; and that the effect of denying them such a judgment renders them liable to an additional judgment of $1,240,000 "for the money they had loaned to the Bridge Commission."

On the other hand we have seen that these contentions of the plaintiffs, as in the case of the others, were considered by the New Jersey Supreme Court. It has specifically protected the equity of every innocent holder by providing that the Bridge Commission shall, from the tolls it collects, liquidate such bonds. It has as specifically declared that the plaintiffs are not to be regarded as innocent holders and that their bonds being null and void the Bridge Commission may not honor them, except to the extent that the Chemical Bank has an interest in them as pledgee, and in the event and to the extent that the Chemical Bank exercises its rights as pledgee so that either principal or interest is paid thereon by the Bridge Commission, *it shall be subrogated to all the rights of the Chemical Bank against the plaintiffs arising out of the transaction which the bonds were given to secure.* It is clear that the judgment of the New Jersey Supreme Court rendered these bonds valueless to the plaintiffs and, contrary to their arguments, the judgment they crave here which would require the Bridge Commission to collect tolls to pay them $1,240,000, would thwart the very judgment imposed upon them by the New Jersey Supreme Court. There can be no ground for such action.

There being no genuine issue as to any material fact the defendants are entitled to have their motion granted that the

---

1. Moreover the plaintiffs based their petition for rehearing to the New Jersey Supreme Court on this ground, among others, that its judgment was unresponsive to the pleadings in the case, which was rejected. Order Denying Petition for Rehearing filed in the office of the Clerk of the New Jersey Supreme Court February 11, 1952.

first count of the complaint shall be dismissed and summary judgment entered in their favor, and the defendant Burlington County Bridge Company is entitled to have its motion granted that the second and third counts of the complaint be dismissed and for summary judgment thereon in its favor.

An order should be settled in conformity with the foregoing conclusions.