225 F.2d 740
 B. J. VAN INGEN & CO., Inc., Appellant,
v.
David J. CONNOLLY et al.
B. J. VAN INGEN & CO., Inc.
v.
David J. CONNOLLY et al.
Mildred E. Gale and Howard Conover, Executors of the Estate of Charles Street Mills, Deceased, and Harry B. Williams, on Behalf of Themselves and in a Representative Capacity on Behalf of All Other Former Holders Similarly Situated of the Stock of Tacony-Palmyra Bridge Company, a New Jersey Corporation (Petitioners for Intervention), Appellants.
 No. 11456.
 No. 11462.
 United States Court of Appeals Third Circuit.
 Argued March 8, 1955.
 Decided August 5, 1955.
 Rehearing Denied No. 11456 September 15, 1955.
 
 Donald B. Kipp, Newark, N. J. (Pitney, Hardin & Ward, Robert P. Hazlehurst, Jr., Newark, N. J., Frederic W. Girdner and James M. FitzSimons, of the New York Bar, New York City, on the brief), for B. J. Van Ingen & Co., Inc.
 Peter H. Kaminer, New York City (Winthrop, Stimson, Putnam & Roberts, New York City, Carpenter, Gilmour & Dwyer, Thomas L. Morrissey, Jersey City, N. J., on the brief), for respondents Blair, Rollins & Co., Inc., Estabrook & Co., Equitable Securities Corp., Harris, Hall & Co., Inc., Lyons & Shafto, Inc., John Nuveen & Co., R. W. Pressprich & Co., Tripp & Co., Inc., and R. D. White & Co.
 Walter D. Van Riper, Newark, N. J. (Van Riper & Belmont, Charles E. Villanueva, Newark, N. J., on the brief), for defendants-appellees, David J. Connolly and William H. Wells, as Receivers.
 Robert L. Hood, Newark, N. J., for Burlington County Bridge Commission.
 Leon H. Kline, Philadelphia, Pa. (David Berger, Morton P. Rome, Philadelphia, Pa., Arthur W. Lewis, Camden, N. J., on the brief), for Mildred E. Gale and others.
 Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 These appeals question the dismissal of an action of interpleader instituted under Section 1335 of Title 28 of the United States Code by B. J. Van Ingen & Co., Inc., hereinafter designated as Van Ingen or appellant, to obtain in the District Court for the District of New Jersey an adjudication determining the lawful disposition of a balance of $1,170,319.80 held by Van Ingen in an account to the credit of the firm of Ketcham and Nongard and admittedly owed to someone. The defendants include David Connolly and William Wells, receivers appointed by the Superior Court of New Jersey to collect a judgment entered in the case of Driscoll v. Burlington-Bristol Bridge Co., 1950, 10 N.J.Super. 545, 77 A.2d 255, modified on appeal, 1952, 8 N.J. 433, 86 A.2d 201. On the day before this interpleader suit was filed, the New Jersey Superior Court had ordered Van Ingen to pay the fund in question to these receivers.
 
 
 2
 On motion of the receivers, the District Court dismissed the present complaint as lacking in equity, meaning, as we understand the matter, that on the undisputed facts compliance with the New Jersey court's order is not likely to subject Van Ingen to such hardship or hazard as should induce a federal court to relieve this party to state litigation of its normal duty to obey the orders of the state court. On this appeal we consider whether the District Court's conclusion constituted a permissible exercise of judgment in an equitable cause.
 
 
 3
 In comprehensive view this interpleader is an attempt to obtain in a federal forum a separate adjudication of a controversy which has arisen in the attempted enforcement of a decree of a state court designed to undo an elaborate scheme of illegal profit-making at public expense. The New Jersey suit was instituted by the Governor on behalf of the people of that State to invalidate transactions whereby a public agency, the Burlington County Bridge Commission, purchased certain toll bridges at an excessive price pursuant to a scheme conceived and engineered by a group of adventurers to obtain an unjustified profit of some three million dollars at the ultimate expense of the traveling and toll-paying public. The New Jersey court found that an involved series of financial transactions did yield such an improper profit. It also found that Tuthill Ketcham, Richard Nongard and Rowland Murray, who are partners and the sole members of the brokerage and trading firm of Ketcham and Nongard, were members of the wrongdoing group. In addition, the partnership was found to have participated actively in the illegal transactions. The decree, as modified pursuant to the mandate of the Supreme Court of New Jersey on appeal, obligated the wrongdoing individuals to pay $3,050,347 to the Burlington County Bridge Commission. Certain wrongdoers, among them Tuthill Ketcham and Richard Nongard, were made liable for the entire sum. The third partner, Rowland Murray, was made liable for $76,258.68.
 
 
 4
 The receivers were charged with collecting this judgment. In due course they asked the Superior Court, which had retained jurisdiction over the matter, for an order requiring Van Ingen to pay them the money which is now in litigation. The matter came on for hearing with Van Ingen, Ketcham and Nongard, and each of the judgment debtors participating after due notice. It was admitted that in the course of the doing and undoing of the financial aspects of the bridge scheme, Van Ingen, as the manager of a bond account in which Ketcham and Nongard and certain of the judgment debtors were interested, found itself on liquidation of that account in possession of a balance of $1,170,319.80 standing to the credit of Ketcham and Nongard. Moreover, affidavits presented to the New Jersey court and later submitted without contradiction to the District Court in support of the motion to dismiss this interpleader, aver that more than $1,300,000 of the illegal gain realized by various participants in the wrongdoing scheme against whom the New Jersey judgment ran, was reflected and represented by the balance payable by Van Ingen to Ketcham and Nongard.
 
 
 5
 On the basis of this showing, the New Jersey court entered its order which reads in part as follows:
 
 
 6
 "And it appearing that B. J. Van Ingen & Co., Inc., now has in its custody and control the sum of One Million, one hundred seventy thousand, three hundred, nineteen dollars and eighty cents ($1,170,319.80), and that all or some of the judgment debtors claim that said sum is due and owing to them;
 
 
 7
 * * * * * *
 
 
 8
 "And it further appearing that both the said B. J. Van Ingen & Co., Inc., and all of the judgment debtors who claim said above-mentioned sum have heretofore participated as Defendants in the proceedings in the above-entitled action which culminated in the entry of a Final judgment on March 14, 1952;
 
 
 9
 "It Is, Therefore, on this 30th day of June, 1954, Ordered that said B. J. Ingen & Co., Inc., transfer and pay over to David J. Connolly and William H. Wells, as Receivers, within 10 days from the date hereof, the said sum of One Million, one hundred seventy thousand, three hundred, nineteen dollars and eighty cents ($1,170,319.80), and the said Receivers are hereby directed to maintain the same in a special bank account separate and apart from any other funds until the further order of this Court. There is hereby reserved to the judgment debtors all of the rights which they may now have in and to said above-mentioned fund or any part thereof."
 
 
 10
 Twenty-four hours later Van Ingen filed this federal interpleader suit, showing requisite diversity of citizenship and jurisdictional amount and asserting that several circumstances would make compliance with the New Jersey order so hazardous as to justify federal intervention.
 
 
 11
 Van Ingen first points out that before obtaining the order in question the New Jersey receivers had sued several of the judgment debtors on the New Jersey judgment in a New York state court and had caused warrants of attachment to be served on various persons including Van Ingen, and that this matter is pending. However, this situation would be vexatious and dangerous to Van Ingen after its compliance with the New Jersey order only if the receivers should then refuse to discontinue and release the New York proceedings as to Van Ingen or to pay all New York costs. Nothing is suggested which might make Van Ingen fearful that the receivers would not promptly take these normal and proper steps. And in moving to dismiss the interpleader the receivers have formally represented that they will discontinue the New York action and pay all costs promptly upon Van Ingen's compliance with the New Jersey order. Moreover, they are officers of a responsible court which can be relied upon to see that this obviously proper action is taken. In these circumstances we think the District Court was clearly right in concluding that the New York litigation would not make obedience to the New Jersey order hazardous or burdensome in any way.
 
 
 12
 Appellant also says that it fears to obey the New Jersey order because Ketcham and Nongard and various judgment debtors have warned it that the New Jersey decree is invalid and that it will make payment pursuant thereto at its peril. Moreover, in a separate action for declaratory judgment, Ketcham, Nongard and Murray are asking the federal district court in New Jersey to entertain a collateral attack upon the New Jersey state judgment and to declare it invalid.[1] But in that action it is not contended that the New Jersey court lacked personal jurisdiction over any of those against whom it rendered judgment. It is recognized that this was a conventional equity suit before a court of general equitable jurisdiction. The only complaint is that the judgment ultimately rendered departed in some measure from the theory upon which the case was tried. Van Ingen is not a party to the declaratory judgment action. Moreover, if Van Ingen was concerned about the possible merits of this challenge to the New Jersey judgment the matter could have been raised in resisting the application of the receivers for the order requiring payment by Van Ingen to them. Any such jurisdictional issue could as well have been decided there as in the present federal proceeding; the same personal jurisdiction over all interested parties exists in both forums. Cf. Mutual Life Ins. Co. v. Egeline, D.C.N.D.Cal.1939, 30 F. Supp. 738. But cf. Maryland Casualty Co. v. Glassell-Taylor and Robinson, 5 Cir., 1946, 156 F.2d 519.
 
 
 13
 In addition, we think the position and role of appellant in this total scheme was properly considered and given weight by the District Court in deciding that appellant might equitably be left to have its responsibility and duty with reference to the fund in question decided in the comprehensive New Jersey suit. The District Court somewhat cryptically described the position in which Van Ingen found itself in the New Jersey litigation as "an occupational hazard" of such financing as it had undertaken. This does not mean that appellant has done anything corrupt. Yet, in disregard of notably suspicious circumstances, sufficient to suggest the need for further inquiry, it elected to handle the financial transactions which the New Jersey court is now trying to unsnarl in a manner which will be just to all concerned. On the basis of the record on appeal in Driscoll v. Burlington-Bristol Bridge Co., Chief Justice Vanderbilt had this to say about Van Ingen's involvement:
 
 
 14
 "The status of the Chemical Bank, of B. J. Van Ingen & Co. and of the other participants in the bond syndicate is not so clear. For some time prior to the issuance of the bonds, the bank and B. J. Van Ingen & Co. had negotiated with Ketcham and Nongard and others representing the selling syndicate. They were aware that the bridge commission was not created until the very day the bonds were issued, the day of the closing at the bank. They were familiar with the Caldwell-Mitchell opinion which called attention to the dangers inherent in the virtually simultaneous creation of the bridge commission, the purchase by it of the bridges and the issuance by it of the bonds. The senior officer of the bank present at the closing had his doubts as to whether the freeholders and the bridge commissioners had been adequately informed of the transaction. B. J. Van Ingen & Co., moreover, was aware of the fact that the State of New Jersey was considering the acquisition of the bridges by condemnation at a price fixed by a statutory formula substantially below that at which the bridges were to be purchased by the bridge commission. In the face of these facts, and although prior to the closing on October 22, 1948, they had never had any contact with the officials in Burlington County who were to be responsible for the acquisition of the bridges and the issuance of the bonds, B. J. Van Ingen & Co. and the Chemical Bank were content merely to assume that the appropriate officials of the county had full knowledge of and had actively participated in the arrangements. They apparently considered it sufficient to rely upon the assurances of the representatives of the selling syndicate to the effect that the transaction was legal and proper in all respects. In the circumstances here present their conduct might well be considered negligent. But under the law as previously summarized suspicion does not constitute knowledge, there is no duty to make inquiry, and even assuming that the plaintiff was negligent such negligence did not amount to fraud, Aldrich v. Peckham, supra, 74 N.J.L. 711, 717, 68 A. 345 (E. & A.1907). There being a lack of proof that the fraud surrounding the issuance of the bonds was brought home to the Chemical Bank and B. J. Van Ingen & Co. before they parted with value on the strength of the validity of the bonds, we are reluctantly driven to the conclusion that they are holders thereof in due course." 8 N.J. 433, 482, 86 A.2d 201, 225.
 
 
 15
 Since this is an analysis of Van Ingen's conduct by the highest court of New Jersey in a proceeding to which Van Ingen was a party, it lends substantial support to the District Court's conclusion as to the lack of equity in Van Ingen's present complaint about the hazards of litigation it now faces.[2] At the very least the New Jersey findings indicate that Van Ingen was notably incautious in undertaking to handle the financing of what proved to be an illegal and fraudulent scheme. It has already been pointed out that affidavits supporting the motion to dismiss the interpleader adequately indicate that the fund in question represents part of the illegal gain. It is, therefore, particularly appropriate that the New Jersey court in its dealings with the total problem should dispose of this fund, deciding what belongs to whom and how it should be allocated. We agree with the District Court that in all the circumstances there is insufficient equity in Van Ingen's present complaint to make it incumbent upon a federal court to interfere by way of interpleader with what the state court is doing.
 
 
 16
 At the same time, we wish to make it clear that our sanction of the District Court's conclusion in the special circumstances of this case is not in derogation of the normal duty of a district court to permit interpleader liberally to relieve parties of the hazards and vexations of conflicting claims against them. We intend no departure from the doctrine consistently recognized in this circuit that the Federal Interpleader Act should be construed and applied liberally "first, to relieve a stakeholder without interest from present litigation, and secondly, to relieve such a one from future litigation by adjudicating the claims of all parties in one suit." See Metropolitan Life Ins. Co. v. Mason, 3 Cir., 1938, 98 F.2d 668, 669. See also the discussion by District Judge, now Circuit Judge, Maris in Metropolitan Life Ins. Co. v. Segaritis, D.C.E.D.Pa. 1937, 20 F.Supp. 739, 740-41.
 
 
 17
 There remains the issue raised by the separate appeal of Mildred Gale and Howard Conover. These parties complain that the District Court erroneously refused to permit them to intervene in this proceeding. We must consider whether they have sought to present any claim which should be adjudicated in this action or which in any way strengthens the claim that interpleader is needed here.
 
 
 18
 These intervenors are stockholders of the original Tacony-Palmyra Bridge Company, suing for themselves and all members of their class. Prior to this attempted intervention they sued the New Jersey judgment debtors in the United States District Court for the District of New Jersey to recover for fraudulent profits alleged to have been realized by the judgment debtors in connection with the acquisition of the Tacony-Palmyra Bridge by the Burlington-Bristol Bridge Co. This sale is alleged to have been an early step in an integrated scheme which culminated in the resale of the bridge properties to the Burlington County Bridge Commission. Thus, the attempted intervention was based upon no more than an unadjudicated tort claim against the judgment debtors.[3] Unless and until Gale and Conover successfully pursue that claim to judgment they have nothing which arguably can be asserted against Van Ingen as a person owing money to those who, in their view, have wronged them. If Van Ingen should pay the receivers and thereafter the intervenors should obtain a judgment against the present New Jersey judgment debtors, we can see no possible way in which a claim could then be asserted against Van Ingen.
 
 
 19
 It follows that the intervention of Gale and Conover could not have changed the propriety of the dismissal of the interpleader suit. Accordingly, no one has been injured in any way by the refusal of the court to permit that attempted intervention.
 
 
 20
 On both appeals the judgment will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 This complaint has now been dismissed on motion for summary judgment. Nongard v. Burlington County Bridge Commission, D.C., 133 F.Supp. 238
 
 
 [2]
 For the effect of more serious dereliction by an interpleader plaintiff in depriving his suit of equity, see Boice v. Boice, D.C.D.N.J.1943, 48 F.Supp. 183, affirmed 3 Cir., 1943, 135 F.2d 919
 
 
 [3]
 The tort case has now been decided against the present intervenors. Mills v. Sarjem Corp., D.C., 133 F.Supp. 753