

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-1995

# NYLife Dist., Inc. v. Adherence Grp., Inc., et al.

Precedential or Non-Precedential:

Docket 94-5725

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"NYLife Dist., Inc. v. Adherence Grp., Inc., et al." (1995). *1995 Decisions*. Paper 326.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/326

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 94-5725

—————

NYLIFE DISTRIBUTORS, INC.

vs.

THE ADHERENCE GROUP, INC;
JOSEPH GERASOLO;
PATRICK BLEACH;
DENNIS SCHNELL;
DONALD THOMAS;
RICHARD HESSEN;
JAMES LYONS;
ELIZABETH GERASOLO

                Joseph Gerasolo, Elizabeth Gerasolo, and
                Patrick Bleach,

                        Appellants

                  —————

       Appeal from the United States District Court
            for the District of New Jersey
             (D.C. Civ. No. 94-cv-00637)

                  —————

                    Argued
              November 29, 1995
    Before:  MANSMANN, SCIRICA and ROTH, Circuit Judges.

            (Filed December 21, 1995)

                  —————

William J. Salmond, Esquire
Alan J. Karcher, Esquire (ARGUED)
Karcher, Salmond, Ronan & Rainone
10 Parsonage Road
CN 2908
Edison, NJ  08818

            Counsel for Appellee

Christopher J. Carey, Esquire
Tompkins, McGuire & Wachenfeld
100 Mulberry Street

Gateway Four
Newark, NJ  07102

Raymond A. Connell, Esquire (ARGUED)
Connell, Losquadro & Zerbo
17 State Street
New York, NY  10004

Counsel for Appellants

_____

OPINION OF THE COURT

_____

MANSMANN, Circuit Judge.

In this case of first impression, we consider whether the broad discretionary standard set forth in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942), or the more narrow "exceptional circumstances" test enunciated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), applies to a district court's decision to dismiss an interpleader action commenced under 28 U.S.C. § 1335 (1993), in favor of parallel state court proceedings.  Guided by the Supreme Court's recent decision in Wilton v. Seven Falls Co., ___ U.S. ___, 115 S. Ct. 2137 (1995), where the Court determined that the Brillhart standard applies in declaratory judgment actions, we hold that a motion to dismiss a federal statutory interpleader action during the pendency of a parallel state court proceeding is addressed to the sound discretion of the district court.

Following the commencement of this section 1335 interpleader action, one of the defendant-claimants commenced a state court action.  After the district court determined that the requirements of the statute had been met, but before the dispute to the stake had been adjudicated, this defendant filed a motion, essentially requesting that the district court defer to the state

3

court action. Conflating the two-step nature of an interpleader action, the district court was of the belief that all federal claims had been eliminated and terminated the case. Instead, the court should have exercised its discretion to decide in which forum, federal or state, the unresolved dispute to the stake could be better determined. We will, therefore, vacate the district court's termination order and remand the case for the court to make this decision.

## I.

Since its commencement, this case has taken a number of procedural twists and turns. We begin by reviewing those aspects of its history that are relevant to the issues before us.

On February 15, 1994, NYLife Distributors, Inc., the averred administrator of the "Mainstay Mutual Fund", filed a complaint in interpleader in the United States District Court for the District of New Jersey under 28 U.S.C. § 1335 (1993),[0] against The Adherence Group, Inc. ("TAG")[0] and several TAG employees, including Joseph Gerasolo, the company's former

---

[0] Rule 22 of the Federal Rules of Civil Procedure is also a provision for interpleader. Fed. R. Civ. P. 22. While both statutory interpleader under 28 U.S.C. § 1335 (1993), and rule interpleader allow a person holding property to join in a single suit two or more persons asserting claims to that property, they are dissimilar in several ways; most notably, unlike statutory interpleader which confers subject matter jurisdiction on the federal courts, rule interpleader is purely procedural. Rule 22 interpleader is not implicated in, nor is it relevant, to this appeal.

[0] The Adherence Group, Inc. refers to itself in its briefs as "TAG" and we adopt that designation.

4

President[0] and Patrick Bleach, its former Executive Vice President.  NYLife is a New York corporation; TAG is organized under the laws of Delaware and has its principal place of business in New Jersey; Gerasolo is a citizen of New York; and Bleach is a citizen of New Jersey.

In its complaint, NYLife asserted that it was subject to conflicting demands from the defendants for monies it was holding in Mainstay Mutual Fund accounts opened for TAG employees in connection with TAG's executive compensation plan.[0]  Claiming no interest in the money, NYLife further alleged that it intended to deposit the money with the court and requested that the defendants be required to interplead and settle among themselves their respective rights to the fund.  On February 16, 1994, the individual defendants' total balance in the Mainstay Mutual Fund, which amounted to $215,489.50, was deposited in the court's Registry.

On March 7, 1994, Gerasolo and Bleach filed an answer to the interpleader complaint averring, inter alia, that TAG's claims were barred by certain settlement agreements, and brought a counterclaim against NYLife, alleging that NYLife's liquidation

---

[0]      Elizabeth Gerasolo, Joseph Gerasolo's wife, was also joined as a defendant in the interpleader action.  For the sake of convenience, we will refer to Joseph and Elizabeth Gerasolo collectively as "Gerasolo".

[0]      More specifically, NYLife alleged that at about the same time it received a letter from TAG's attorney advising that "monies . . . had been improperly diverted from [TAG] to the [Mainstay Mutual Fund] accounts of the individual defendants . . ." and directing that "no funds be distributed from any of the accounts of the individual defendants until further notice[]", it received a request from one of the individual defendants for money from his Mainstay Mutual Fund account.

of their respective Mainstay Mutual Fund accounts was a breach of contractual and fiduciary duties. Additionally, Gerasolo and Bleach filed a cross-motion requesting, inter alia, that NYLife's interpleader action be dismissed, except for the purpose of determining the damages they had allegedly sustained as a result of NYLife's actions.

On March 17, 1994, TAG filed an answer to NYLife's complaint, admitting that it and the individual defendants had subjected NYLife to conflicting claims for Mainstay Mutual Fund monies.

Shortly thereafter, on March 23, 1994, TAG and its sole shareholder, TAG/SCIB Services A.G., commenced an action in the Superior Court of New Jersey, Middlesex County, against Gerasolo and Bleach, alleging that they had wrongfully appropriated TAG assets, including the monies deposited in the Mainstay Mutual Fund, through fraud, embezzlement and conversion, and against the Moore Stephens Accounting Firm, TAG's auditor, for failure to uncover the fraud. The complaint was later amended on July 20, 1994, to join the law firm of Connell, Losquadro & Zerbo and unknown "John Doe" fictional defendants for allegedly conspiring with Gerasolo and Bleach to defraud TAG.

On May 19, 1994, the district court issued an order granting NYLife's motion for a judgment in interpleader in the amount of $215,489.50; dismissing NYLife from the case and from any future liability for the payment of the money into the court Registry; ordering that the defendants be enjoined from instituting any other action against NYLife or its affiliates

6

based on NYLife's commencement of the interpleader action; awarding NYLife its attorneys' fees and costs; and dismissing the cross-motion for dismissal and counterclaim against NYLife that Gerasolo and Bleach had filed.

On June 1, 1994, Gerasolo and Bleach filed an amended answer to the interpleader complaint, adding cross-claims against TAG under New Jersey law for breach of contract, violations of the New Jersey Conscientious Employee Protection Act, 34 N.J. Stat. Ann. § 19-1 et seq. (1988), and malicious abuse of process.

Thereafter, the parties engaged in discovery.

On July 7, 1995, TAG filed a motion asking the district court to dismiss the cross-claims Gerasolo and Bleach had asserted against it and to transfer the interpleaded fund to the Superior Court of New Jersey; in the alternative, TAG asked the court to retain the fund while the parties litigated their entitlement to the money in the action TAG had commenced in the New Jersey state court.

By order dated October 26, 1994, the district court granted TAG's motion. Of the view that its May 19, 1994 order, which granted NYLife's motion for judgment in interpleader, denied Gerasolo's and Bleach's cross-motion for dismissal of the interpleader action and dismissed the counterclaim against NYLife, had "eliminat[ed]" all federal claims in this case[]", the court concluded that TAG was requesting that the court invoke its discretion under 28 U.S.C. § 1367(c) (1993) and decline to exercise supplemental jurisdiction over Gerasolo's and Bleach's state law cross-claims. Citing 28 U.S.C. § 1367(c)(3), which

7

provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed claims over which it has original jurisdiction[]", the court decided not to exercise its supplemental jurisdiction over the cross-claims based on its belief that no federal claims remained in the case. Accordingly, in its October 26, 1994 order, the court dismissed the cross-claims, retained jurisdiction over the interpleaded fund pending the outcome of the state court litigation (at which time the party who prevails in the state court may apply to the district court for a distribution of the fund) and administratively terminated the case.

Gerasolo and Bleach bring this appeal from the district court's October 26, 1994 order, contending that due to the court's misinterpretation of 28 U.S.C. § 1335, it in effect improperly "abstained" from this statutory interpleader action.[0]

## II.

The federal interpleader statute, 28 U.S.C. § 1335 (1993), is a remedial device which enables a person holding property or money to compel two or more persons asserting mutually exclusive rights to the fund to join and litigate their

---

[0] The district court's October 26, 1994 order turned on its interpretation of the federal interpleader statute, 28 U.S.C. § 1335, which then formed the basis of the court's application of the supplemental jurisdiction statute, 28 U.S.C. § 1367(c)(3) (1993). Accordingly, our review is plenary. See Air Courier Conference of Am./Int'l Comm. v. United States Postal Serv., 959 F.2d 1213, 1217, n.3 (3d Cir. 1992) (statutory construction or interpretation is a legal issue subject to plenary review).

8

respective claims in one action.  3A J. Moore & J. Lucas, Moore's

Federal Practice § 22.02[1] (2d ed. 1994).  The benefits of the

device to both the stakeholder and the claimants are substantial.

It relieves the stakeholder from determining at his peril the

merits of competing claims and shields him from the prospect of

multiple liability; it gives the claimant who ultimately prevails

ready access to the disputed fund.  Id.

Section 1335 grants original jurisdiction to the

district courts over interpleader actions and sets forth certain

requirements that must be met before the action may be

maintained.  For example, although the citizenship of the

stakeholder is irrelevant for jurisdictional purposes, the

statute calls for diversity of citizenship between two or more of

the adverse claimants, requires that the amount in controversy,

which is measured by the value of the stake, be $500, and compels

the stakeholder to deposit the money or property at issue in the

court's Registry or, in the alternative, to give a bond payable

to the clerk of courts in the appropriate amount.[0]  28 U.S.C.

---

[0]    Section 1335 provides:

**§ 1335.    Interpleader**

(a) The district courts shall have
original jurisdiction of any civil action of
interpleader or in the nature of interpleader
filed by any person, firm, or corporation,
association, or society having in his or its
custody or possession money or property of
the value of $500 or more, or having issued a
note, bond, certificate, policy of insurance,
or other instrument of value or amount of
$500 or more, or providing for the delivery
or payment or the loan of money or property

9

§ 1335(a). Additionally, 28 U.S.C. § 2361 (1994) provides for nationwide service on all claimants in statutory interpleader actions and allows a district court in a section 1335 interpleader case to enjoin any state or federal proceedings affecting the stake; 28 U.S.C. § 1397 (1993) provides that section 1335 interpleader cases may be brought where one or more of the claimants reside.[0]

---

of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335 (1993).

[0] Section 2361 states:

**§ 2361.    Process and procedure**

10

An action commenced under section 1335 typically involves two steps:  during the first, the district court determines whether the requirements of the statute have been met and whether the stakeholder may be relieved from liability; during the second, it actually adjudicates the defendants' adverse claims to the interpleaded fund.  <u>New York Ins. Co. v. Connecticut Dev. Auth.</u>, 700 F.2d 91, 95 (2d Cir. 1983); 7 C. Wright, A. Miller & M. Kane, 7 Federal Practice and Procedure

---

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.  Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C.§ 2361 (1994).

Section 1397 states:

## § 1397.  Interpleader

> Any civil action of interpleader or in the nature of interpleader under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside.

28 U.S.C. §1397 (1993).

11

§ 1714 (2nd ed. 1986). The second stage, which proceeds like any other action, is ultimately resolved by the entry of a judgment in favor of the claimant who is lawfully entitled to the stake. See Diamond Shamrock Oil & Gas Corp. v. Commissioner of Revenues, 422 F.2d 532, 534 (8th Cir. 1970).

Here the district court completed the first step of interpleader on May 19, 1994, when it granted NYLife's motion for a judgment in interpleader and discharged NYLife from liability. The court did not, however, proceed to section 1335's second step -- the unresolved dispute between the claimants for the interpleaded fund, which was, like the first, within the court's original jurisdiction. We thus hold that the district court's conclusion that all federal claims had been dismissed by virtue of its May 19, 1994 order was in error, and that its October 26, 1994 decision to terminate the case in favor of TAG's pending state court action on this basis was as well erroneous. It necessarily follows and we further conclude that the district court erred when it also dismissed Gerasolo's cross-claims under 28 U.S.C. § 1367(c)(3) (1993) on October 26, 1994, believing that all claims over which it had original jurisdiction had been eliminated from the case.

Our analysis, however, does not end here. We turn next to the legal principles that are implicated by that portion of TAG's motion which in effect requested that the interpleader action be dismissed so as to allow the parties to resolve their dispute over the Mainstay Mutual Fund monies in the New Jersey state court.

12

III.

It is, of course, the general rule that the mere pendency of a similar action in a state court does not require, nor even permit, a federal court to refuse to hear or to stay an action that is properly within its jurisdiction, and that both state and federal actions should go forward until one of them results in a judgment that may be asserted as res judicata in the other, McClellan v. Carland, 217 U.S. 268, 281-82 (1910). Nonetheless, three doctrines of abstention have evolved which allow the district courts to decline to hear cases over which they have jurisdiction.[0] The parties are in agreement that these traditional abstention doctrines, which rest on considerations of proper constitutional adjudication or federal-state relations, do not apply in this case.

Over the years, an additional ground for dismissing or staying a federal action in favor of state court proceedings has developed; it is aimed at avoiding duplicative litigation and is premised on considerations which concern the efficient administration of judicial resources and the comprehensive

---

[0]     The three traditional doctrines of abstention are: Pullman abstention, which is proper when a state court determination of a question of state law might moot or change a federal constitutional issue, Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941); Burford abstention, which applies when questions of state law in which the state has expressed a desire to establish a coherent policy on a matter of substantial public concern are raised, Burford v. Sun Oil Co., 319 U.S. 315 (1943); and Younger abstention, which is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked to restrain state criminal proceedings. Younger v. Harris, 401 U.S. 37 (1971).

13

disposition of cases.  See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976).  In our view, it is this additional category that is raised here.

A.

Some fifty years ago, in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942), the Supreme Court held that the district courts may decline to hear lawsuits brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), in favor of pending state actions for reasons of judicial economy, even where they have jurisdiction.  Wilton v. Seven Falls Co., ___ U.S. ___, 115 S. Ct. 2137, 2140 (1995).  In Brillhart, the Excess Insurance Company of America commenced a declaratory judgment in federal court to determine its rights under a reinsurance agreement with Central Mutual Insurance Company.  Subsequently, Excess Insurance was joined in a Missouri state court garnishment proceeding that had been brought by Dewey Brillhart, the administrator of an estate, against Central Insurance to collect on a default judgment.  Brillhart then moved to dismiss the declaratory judgment action, principally on the ground that the issues Excess Insurance raised could be decided in the state garnishment proceeding.  The district court granted Brillhart's motion to dismiss, apparently to avoid delay, without considering whether Excess Insurance's declaratory judgment claims could be resolved in the garnishment proceeding.  The Court of Appeals for the Eighth Circuit reversed, holding that dismissal of the declaratory judgment action was an abuse of discretion, and

14

remanded the case to the district court, directing it to proceed to the merits.

Reversing the court of appeals and remanding to the district court for another determination of the motion, the Supreme Court stated that "[a]lthough the [d]istrict [c]ourt had jurisdiction . . ., it was under no compulsion to exercise that jurisdiction[]", 316 U.S. at 494, and made clear that the district courts have the discretion to dismiss a declaratory judgment action when "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Id. at 495. The Court did not articulate all of the considerations which should guide a district court's decision in this regard; it did provide, however, that the court "should ascertain whether the questions in controversy between the parties to the federal suit[] . . . can better be settled in the proceeding pending in state court[]", assess "the scope of the pending state proceeding and the nature of the defenses open there[]", and evaluate "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding, etc." Id.

Later, in the 1976 Colorado River case, 424 U.S. at 800, the Supreme Court revisited the propriety of a district court's decision to dismiss a federal suit in favor of a concurrent state court proceeding for reasons of judicial economy

15

and efficiency.  There, the government filed a complaint pursuant to 28 U.S.C. § 1345 (1993), which grants the district courts original jurisdiction of all civil actions commenced by the United States, against some 1,000 non-federal water users for a declaration of the government's rights to water in certain Colorado rivers and their tributaries.  Shortly after the federal suit was commenced, one of the defendants commenced a state proceeding for the purpose of adjudicating all government claims to the water, both state and federal.  Several parties in the federal action then filed a motion to dismiss, asserting that the district court did not have jurisdiction.  Without deciding the jurisdictional question, the district court abstained.  On appeal, the Court of Appeals for the Tenth Circuit reversed, holding that the district court had jurisdiction and that abstention was inappropriate.

Reversing the court of appeals' judgment, the Supreme Court confirmed that federal courts may, in appropriate circumstances, defer to state court proceedings for reasons of wise judicial administration, but, without discussing Brillhart, announced a very different standard.  424 U.S. at 817.  Where in Brillhart the Court warned district courts against "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" and directed them to exercise discretion in deciding whether or not to proceed, 316 U.S. at 495, in Colorado River the Court referred to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them[]", and set forth an "exceptional circumstances" test

16

of several factors that the district courts should utilize. 424 U.S. at 817-18. These factors are whether either court has assumed jurisdiction over property, the inconvenience of the federal forum, avoidance of piecemeal litigation, and the order in which the courts obtained jurisdiction. Id. at 818.

Two years after its decision in Colorado River, the Court decided Will v. Calvert Fire Ins. Co., 437 U.S. 655 (1978), which concerned an action for an alleged violation of the federal securities laws commenced in federal court during the pendency of a related state court case. Relying on Brillhart, a plurality of the Court reversed the grant of a petition for a writ of mandamus ordering the district court to adjudicate the claim. According to the plurality, Colorado River had not "undermined[d] the conclusion of Brillhart that the decision whether to defer to the concurrent jurisdiction of a state court is, in the last analysis, a matter committed to the district court's discretion." Id. at 664. Four Justices, however, joined Justice Brennan's dissent, which took issue with the plurality's reliance on Brillhart and its disregard for the Colorado River exceptional circumstances test. Id. at 668-77. Chief Justice Burger, although concurring in the judgment, agreed with the dissent that the Colorado River test was controlling. Id. at 668. In his dissenting opinion, Justice Brennan observed that while Brillhart concerned an action for a declaratory judgment where federal jurisdiction is "discretionary", Calvert involved a claim under the Securities Exchange Act of 1934 over which the federal courts

17

have been given "non-discretionary", exclusive jurisdiction.  Id. at 672.

Subsequently, in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), the Court ruled that the Colorado River exceptional circumstances test, not the Brillhart discretionary approach, applies to a district court's decision to stay a diversity of citizenship action brought under section 4 of the United States Arbitration Act of 1925, 9 U.S.C. § 4, seeking an order compelling arbitration, id. at 14-19, and added two factors to the test -- which forum's substantive law governs the merits of the litigation and the adequacy of the state forum to protect the parties' rights.  Id. at 26.  In doing so, the Court rejected the argument that Calvert had changed the law, noting that the majority of the Court in Calvert reaffirmed the Colorado River exceptional circumstances test, id. at 17, and that Calvert was distinguishable, since it involved the issuance of a writ of mandamus under 28 U.S.C. § 1651, where the movant must show a clear and indisputable right to the writ, not a typical appeal.  Id. at 18.

Given these conflicting messages, not surprisingly circuit conflicts have arisen over the standard which governs a district court's decision to stay a declaratory judgment action in favor of parallel state proceedings; several courts, including our own, have applied the discretionary standard articulated in Brillhart, e.g., Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc., 996 F.2d 774, 778, n.12 (5th Cir. 1993) and Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213 (3d Cir.

18

1989), while other courts applied the relatively narrow exceptional circumstances test developed in <u>Colorado River</u>. <u>E.g.</u>, <u>Employers Ins. of Wausau v. Missouri Elec. Works, Inc.</u>, 23 F.3d 1372, 1374, n.3 (8th Cir. 1994).

Quite recently, the Supreme Court resolved the conflict in <u>Wilton</u>, ___ U.S. ___, 115 S. Ct. at 2137, holding that the <u>Brillhart</u> discretionary standard governs a district court's decision to stay a federal declaratory judgment action during the pendency of parallel state court proceedings. There a dispute between the Hill Group and other parties over the ownership and operation of oil and gas properties in Winkler County, Texas, was headed toward litigation. The Hill Group asked London Underwriters to provide it with coverage under several insurance policies in the event it was sued; London Underwriters refused. Following a three-week trial in Winkler County, a jury verdict in excess of $100 million was entered against the Hill Group. After the Hill Group gave London Underwriters notice of the verdict, the insurer filed an action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988 ed., Supp. V), in federal court, seeking a declaration that the policies did not cover the Hill Group's liability. This action was voluntarily dismissed, but later refiled when the Hill Group sued London Underwriters on the insurance policies in a state court. The Hill Group then moved to dismiss or, in the alternative, to stay London Underwriters' declaratory judgment action. Observing that the state lawsuit encompassed the coverage issues raised in the declaratory judgment action and concluding that a stay was warranted in order

to avoid piecemeal litigation, the district court issued a stay; noting that "'[a] district court has broad discretion to grant (or decline to grant) declaratory judgment[]'", the Court of Appeals for the Fifth Circuit affirmed. Id. at 2139-40.

The Supreme Court also affirmed. Its decision was premised on "[d]istinct features of the Declaratory Judgment Act," which in the Court's view, "justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the `exceptional circumstances' test of Colorado River and Moses H. Cone." Id. at 2142. After noting the statute's "textual commitment to discretion" wherein a court "may declare the rights and other legal relations of any interested party seeking such a declaration," 28 U.S.C. §2201(a), and the "breadth of leeway [it has] always understood [the Act] to suggest", the Court concluded that "[b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver"; it created "an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Id. at 2143. Accordingly, the Court held that "[c]onsistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Id. (footnote omitted). The Court further held that the district courts are vested with discretion to make these determinations in the first instance and that their decisions should be reviewed under the abuse of discretion standard. Id. at 2144.

20

We turn now to the standard that governs a district court's decision to dismiss or stay an interpleader action commenced under 28 U.S.C. § 1335 (1993), due to the pendency of concurrent state court proceedings.

B.

At the outset, we observe that district courts have traditionally assumed that they possess broad equitable discretion to decline jurisdiction over a statutory interpleader lawsuit where in their view there is a pending state proceeding that obviates the need for the federal action. In B. J. Van Ingen & Co. v. Connolly, 225 F.2d 740 (3d Cir. 1955), for example, when we affirmed the district court's dismissal of an interpleader action, we agreed that "in all the circumstances there was insufficient equity in the [plaintiff's] present complaint to make it incumbent upon a federal court to interfere by way of interpleader with what the state court [was] doing." Id. at 744. We also observed that the district court had "properly considered and given weight" to the plaintiff's position in deciding that "[the plaintiff] might equitably be left to have its responsibility and duty with references to the fund in question decided in the comprehensive New Jersey suit." Id. at 743. See also American Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990) ("[I]t is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held

21

doubly liable."); Koehring Co. v. Hyde Const. Co., 424 F.2d 1200, 1202 (7th Cir. 1970) ("[A] federal district court [has] the discretion to dismiss an action in statutory interpleader on grounds of equity and comity, when the interests of the stakeholder and all claimants will be adequately protected in a pending state court proceeding[]"."); Humble Oil & Refining Co. v. Copeland, 398 F.2d 364, 368 (4th Cir. 1968) ("The genesis of interpleader is equity, and we perceive no reason why it should be denied the remedial flexibility of a chancellor's decree. Thus, the district court can stay its proceedings [and] permit the parties to litigate ownership of the royalties in [state court] . . . ."); Equitable Assur. Soc. v. Porter-Englehart, 867 F.2d 79, 83 (1st Cir. 1989) (agreeing that the federal courts may in their discretion dismiss or stay statutory interpleader actions in favor of ongoing state proceedings); Hickok v. Gulf Oil Co., 265 F.2d 798 (6th Cir. 1959) (same). Contra Boston Old Colony Ins. Co. v. Balbin, 591 F.2d 1040 (5th Cir. 1979) (holding that a district court may not abstain from an interpleader action where important state public policy and "unusual circumstances" are not present).

Our review has not produced nor have the parties suggested any cases which analyze the scope of a district court's discretion under 28 U.S.C. § 1335 (1993) to defer to state proceedings in light of the Supreme Court decisions we have discussed. We believe our threshold inquiry is whether the exceptional circumstances test set forth in Colorado River Conservation Dist. v. United States, 424 U.S. 800 (1976), must

22

invariably be applied whenever a district court with jurisdiction considers a request to defer to a state court action. In our view, it need not. We read the Supreme Court's decisions, beginning with Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942), and ending with Wilton v. Seven Falls Co., ___ U.S. ___, 115 S. Ct. 2137 (1995), to instruct that the exceptional circumstances test is not universal and will yield in cases where the statute which grants a district court the authority to decide a matter "justif[ies] [as does the Declaratory Judgment Act] a standard vesting district courts with greater discretion . . . than that permitted under the `exceptional circumstances' test of Colorado River and Moses H. Cone." See Wilton, ___ U.S. ___, 115 S. Ct. at 2140.

Accordingly, we look to the interpleader statute to determine which standard -- the discretionary approach taken in Brillhart or the exceptional circumstances test set forth in Colorado River -- governs a district court's decision to dismiss a federal interpleader action in favor of pending state proceedings. We initially observe that historically and under the statute, interpleader is a suit in equity. Sanders v. Armour Fertilizer Works, 292 U.S. 190, 199 (1934); 4 J. Pomeroy, A Treatise on Equity Jurisprudence § 1320 (5th ed. 1941).[0] A

----

[0] The first federal Interpleader Act was passed in 1917. Act of Feb. 22, 1917, ch. 113, 39 Stat. 929 (1917) (repealed 1926). The present provisions at 28 U.S.C. § 1335 (1993) and 28 U.S.C. § 2361 (1994) are bottomed on the Act as amended in 1936. 3A J. Moore & J. Lucas, Moore's Federal Practice, § 22.06 (2d ed. 1994). In the 1936 Act, the district courts were given original jurisdiction "[o]f suits in equity begun by bills of interpleader or bills in the nature of bills of interpleader . . . ." Act of

23

federal interpleader court, therefore, by the nature of its jurisdiction proceeds with broad discretion. <u>Meredith v. City of Winter Haven</u>, 320 U.S. 228, 235 (1943). ("[A]n appeal to the equity jurisdiction conferred on [the] federal courts is an appeal to the sound discretion which guides the determinations of courts of equity."). <u>Hecht Co. v. Bowles</u>, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it.").

Hence, one of two related questions we face is whether under section 1335, the district courts retain their traditional equitable discretion when deciding whether to hear a statutory interpleader case or defer to a state court; and the other is whether the district courts have a "virtually unflagging obligation" to exercise their section 1335 jurisdiction. In this regard, we find the Supreme Court's decision in <u>Weinberger v. Romeo-Barcelo</u>, 456 U.S. 305 (1982), instructive. There, the Court considered whether, under the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 <u>et</u> <u>seq.</u> (1976 ed. and Supp. IV), the district courts must enjoin violations of the Act or whether they retain the broad discretion that equity jurisdiction provides them in deciding issues of injunctive relief. To decide the issue, the Court looked to the overall structure and language, purpose and legislative history of the

---

Jan. 20, 1936, ch. 13, 49 Stat. 1096 (1936) (current version at 28 U.S.C. § 1335(a)).

Act to determine whether Congress clearly intended to alter traditional equity practices, stating:

> `[T]he comprehensiveness of [the district court's] equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.  Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.  The great principles of equity, securing complete justice, should not be yielded to light inferences or doubtful construction.'

Id. at 313 (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946)).

The Court cautioned, however, that "[of] course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles."  Id. at 313.

Ultimately, the Court found nothing in the Clean Waters Act's language, structure, purpose or legislative history evidencing Congress' intent to deny the courts their traditional equitable discretion in deciding matters of equitable relief. Id. at 319.  Compare Bowles, 321 U.S. at 321 (holding that the phrase "shall be granted" in section 925 of the Emergency Price Control Act of 1942, 50 U.S.C. § 901 et seq., does not mean that injunctions for violations of the Act are mandatory; "if Congress had intended to make such a drastic departure from the tradition of equity practice, an unequivocal statement of its purpose would have been made.") with TVA v. Hill, 437 U.S. 153 (1978) (holding that the plain language and purpose of the Endangered Species

25

Acts, 16 U.S.C. 1531 et seq., contains a flat ban on the destruction of critical habitats, thereby foreclosing the exercise of the usual discretion possessed by a court of equity and requiring a district court to enjoin violations of the Act).

Against this backdrop, we turn to the text and structure, purpose and legislative history of section 1335 to determine the parameters of the district courts' discretion to decline jurisdiction and defer to state court proceedings for the sake of judicial administration and efficiency, looking specifically for any indication that Congress sought to limit a federal interpleader court's broad equitable discretion in such matters.

Starting with the statute's language and structure, we find that the text of section 1335, when considered with 28 U.S.C. § 2361 (1994), is inconclusive. Section 1335(b) of the interpleader statute provides that an action over which the district courts are granted original jurisdiction under section 1335(a) "may be entertained", even where the titles to or claims of the conflicting claimants are adverse and independent of one another. 28 U.S.C. § 1335(b) (emphasis added). Although section 1335(b) is cast in discretionary terms, its permissive tone may relate solely to Congress' decision to abolish in the interpleader statute certain "historical limitations" that had been imposed on interpleader actions. See 3A J. Moore & J. Lucas, Moore's Federal Practice § 22.11 (2d ed. 1994) (The four historical requisites to a strict bill of interpleader were "same debt, common origin, disinterested shareholder and the absence of

26

independent liability. . . ."). Section 2361, which authorizes the district courts to issue nationwide process and enjoin other actions affecting the stake, arguably suggests that a court may not decline to hear the case, stating that "[the] district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361 (emphasis added). We have not found any clues in other portions of section 1335[0] or section 2361 or in relevant legislative history to elucidate this language and its meaning. It does not seem likely, however, that at the same time Congress by way of section 2361 gave the district courts the considerable

---

[0] In support of their argument that the exceptional circumstances test set forth in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), should guide a district court's decision to dismiss a federal interpleader action in favor of pending state proceedings, Gerasolo and Bleach rely heavily on section 1335(a), which states in pertinent part that "[t]he district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader. . . ." 28 U.S.C. § 1335(a) (1993) (emphasis added). In our view, section 1335(a) represents Congress' decision to grant jurisdiction to the district courts in interpleader actions; it is not, as Gerasolo and Bleach urge, a directive on Congress' part that the district courts exercise that jurisdiction.

We note that Congress typically uses the language we see in 28 U.S.C. § 1335(a) when granting jurisdiction to the district courts. See, e.g., 28 U.S.C. § 1331 (1993) ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."); Id. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 . . . and is between -- (1) citizens of different States . . . . "); Id. §1345 ("[T]he district courts shall have original jurisdiction of all civil actions . . . commenced by the United States. . . .").

27

tool of nationwide process, retained their equitable power to order injunctive relief, and even granted them injunctive authority over state courts, thereby exempting statutory interpleader actions from the proscriptions of the Anti-Injunction Act, 28 U.S.C. § 2283 (1994), it intended to narrow, if not eliminate, the district courts' discretion in deciding whether the issues raised in an interpleader action may be better resolved in a state court. We thus see section 2361 as a source of authority for the district courts, not as a command to the courts to exercise jurisdiction. We therefore resolve any ambiguities in sections 1335 and 2361 with regard to the district courts' capacity to decline jurisdiction in favor of that interpretation which preserves the courts' equitable discretion. See Bowles, 321 U.S. at 329.

As to the purpose of section 1335, it has long been recognized that the interpleader statute is remedial, aimed at assisting a party who fears the vexation of defending multiple claims to a fund or property under his control by providing him the opportunity to satisfy his obligation in a single proceeding. See State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 533 (1967). Indeed, the trend over the years has been directed toward increasing the availability of interpleader and relaxing historical, technical restraints on the device. For example, the first interpleader statute, passed in 1917, limited the district courts' jurisdiction to strict bills of interpleader brought by an insurance company or a fraternal beneficiary society, Act of Feb. 22, 1917, ch. 113, 39 Stat. 929 (1917) (repealed 1926); by

28

1936, statutory interpleader was, as it still is, available to "any person, firm, corporation, association, or society. . . ." Act of Jan. 20, 1936, ch. 13, 49 Stat. 1096 (1936) (current version at 28 U.S.C. § 1335(a)).  Moreover, since initially enacted, statutory interpleader has been greatly broadened to include within its purview disputes concerning a wide range of obligations and competing claims.  Id. (current version at 28 U.S.C. § 1335(a),(b)).[0]  See Zechariah Chaffee, Jr., The Federal Interpleader Act of 1936: I. and II., 45 Yale L.J. 963, 1161 (1936).  This expansion of the remedy leads us to conclude that by the interpleader statute, Congress was more interested in providing an opportunity to litigants to resolve disputes, than in creating a duty in the district courts to exercise the jurisdiction given them therein.

---

[0]     A Senate Report summarized the modifications made to the statute by the Act of 1936 as follows:

> Bills in the nature of interpleader are included;
> The class of parties entitled to use of the remedy is broadened;
> The scope of interpleader is extended over other subjects than insurance;
> The titles or claims supporting the action are extended;
> The venue is made more convenient for claimants;
> A bond is permitted as an alternative deposit;
> Privity among claimants is abolished;
> Interpleader is allowed defensively in actions at law.

S. Rep. No. 558, 74th Cong., 1st Sess. 1 (1935).

Finally, although the statute's scant legislative history does not shed light on the question we are deciding, it does not reveal any evidence of intent on Congress' part to limit or otherwise alter traditional equity practice in section 1335 cases or to make the interpleader remedy obligatory.

We thus hold that the discretionary standard enunciated in Brillhart governs a district court's decision to dismiss an action commenced under the interpleader statute during the pendency of parallel state court proceedings.

IV.

In Wilton v. Seven Falls Co., ___ U.S. ___, 115 S. Ct. 2137 (1995), the Court held that the decision to entertain a declaratory judgment action in view of a pending parallel state action is committed to the district courts in the first instance because "facts bearing on the usefulness of the . . . remedy, and the fitness of the case for resolution, are particularly within their grasp." Id. at 2144. We believe that the same holds true in interpleader cases brought under 28 U.S.C. §1335 (1993). Thus, this case must be remanded to the district court for it to exercise its sound discretion in deciding whether to dismiss this action in favor of the proceeding pending in the Superior Court of New Jersey.

On remand, the district court should determine, as a threshold matter, whether the state court action is indeed "parallel"; that is, whether it encompasses the competing claims to the Mainstay Mutual Fund monies that are raised here. Since

30

the very basis for deference is the avoidance of needless duplicative litigation, the absence of a parallel state proceeding, as we have defined it in this context, would counsel against, if not proscribe, dismissal. Thereafter, in considering TAG's motion, the district court should bear in mind that neither the mere pendency of a parallel state court action nor the mere presence of state law issues in this case would support dismissal; the court must remain cognizant of the purpose of the interpleader statute, ultimately determining where the competing claims that expose the stakeholder to multiple lawsuits and liability "can better be settled." See Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942). In this regard, the court should evaluate which forum will protect the stakeholder more effectively while providing the claimants with the more efficient, convenient, and expeditious vehicle to settle their dispute to the fund. We would also expect the district court to evaluate the conduct of the parties in litigating both the federal and state actions to ensure that procedural fencing, forum shopping or gamesmanship is not rewarded. We do not intend the considerations we have enunciated to be comprehensive, and leave it to the district court to consider any other factors it finds relevant.

Finally, as the Court noted in Wilton, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the

controversy". Id. at 2143, n.2. Accordingly, the district court should also consider whether a stay of this action, rather than a dismissal, is appropriate, in the event it decides that the parties are to resolve the issues raised in this action in the state court.

V.

For the foregoing reasons, we will vacate the district court's October 26, 1994 order and remand the case to the district court for further proceedings on the Adherence Group's July 7, 1994 motion which requested that the court defer to the New Jersey state court proceeding as to the interpleaded claims and dismiss the cross-claims brought against it by Gerasolo and Bleach.

-----------------------------------------------------------------


ROTH, Circuit Judge:

I agree with the majority's conclusion that the district court improperly terminated the interpleader proceedings, mistakenly believing that all federal claims had been dismissed.  Unlike the majority, however, I am of the opinion that, after concluding that jurisdiction was proper under 28 U.S.C. § 1335 and dismissing the stakeholder from future liability, the district court was obligated to adjudicate the remainder of the interpleader proceeding.  I therefore respectfully dissent.

The majority opinion concludes that the broad discretionary standard enunciated by the Supreme Court in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942), should be applied in this case.  I disagree.  Having completed the first stage of this interpleader proceeding, the district court was obligated to entertain the second stage of the proceeding, abstaining in favor of parallel state court proceedings only if exceptional circumstances required.  Thus, I would hold that the appropriate standard to apply in this case is the "exceptional circumstances" test established by the Supreme Court in Colorado

River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

I believe that the majority misinterprets the recent Supreme Court decision in Wilton v. Seven Falls Co., ___ U.S. ___, 115 S.Ct. 2137 (1995). In my opinion, Wilton restricts the application of Brillhart's discretionary standard to actions brought under the Declaratory Judgment Act or similar statutes giving district courts express discretionary jurisdiction. Id. at 2142. Beyond the declaratory judgment context and in the absence of express language granting jurisdictional discretion, however, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress. Id.; Colorado River, 424 U.S. at 817-18. Because this case clearly falls outside of the declaratory judgment context and because there is no statutory indication that there is a discretionary character to the second stage of an interpleader proceeding, Brillhart's broad discretionary standard should not be applied in this case.

In Wilton, the Court acknowledged that the suggestion "that Brillhart might have application beyond the context of declaratory judgments was rejected by the Court in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)." Wilton, 115 S.Ct. at 2142. The Declaratory Judgment Act "has been understood to confer on federal courts unique and substantial discretion," id. (emphasis added), because it provides that a court "may declare the rights and other legal relations of any interested party seeking [a]

34

declaration."  28 U.S.C. § 2201(a) (1988 ed., Supp. V) (emphasis added).  It is clear from the language of the Act that Congress intended federal courts to have discretion when deciding whether to hear actions involving declaratory relief.

Section 1335, however, contains no language indicating that Congress intended courts to have such jurisdictional discretion when adjudicating interpleader proceedings.  On the contrary, section 1335(a) provides that "[t]he district courts shall have original jurisdiction of any civil action of interpleader . . . ."[0]  28 U.S.C. § 1335(a).  Section 1335 was intended to allow more parties to bring interpleader actions in federal courts by broadening the availability and the nature of relief.  Congress therefore minimized diversity requirements, lowered the required amount in controversy, and provided for nationwide service of process.  28 U.S.C. §§ 1335(a) & 2361; see 3A MOORE'S FEDERAL PRACTICE ¶ 22.11 (1995).  Nothing in prior Supreme Court decisions allows this court to carve out a discretionary niche based on the equitable nature of interpleader relief where Congress has clearly expressed its desire to provide a federal forum for diverse litigants.  "'[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.'"  Colorado River, 424 U.S. at 813–14

_____

[0]     While I agree with the majority's characterization of section 1335(b), I believe that the word "shall" in section 1335(a) cannot be ignored merely because its use by Congress is "typical," as suggested by the majority opinion.  Op. at 27, n.10.

35

(quoting Alabama Pub. Serv. Comm'n v. Southern Ry. Co., 341 U.S. 341 (1951)).

Abstention in favor of the state court proceeding is particularly disconcerting in this case because the federal proceeding was well underway.  Indeed, as discussed in the majority opinion, the first stage of the proceeding had been entirely completed:  the complaint was filed and answered, the court found that the jurisdictional requirements had been met and dismissed NYLife Distributors from the case and from any future liability.  The only thing remaining for the court to do was to resolve the dispute between the claimants for the interpleaded fund.

The federal court clearly had priority over this case. Moses H. Cone, 460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). "It has been held . . . that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts[.]"  Colorado River, 424 U.S. at 818, 96 S.Ct. at 1246-47 (citing Donovan v. City of Dallas, 377 U.S. 408, 412 (1964); Princess Lida v. Thompson, 305 U.S. 456, 466 (1939); United States v. Bank of New York & Trust Co., 296 U.S. 463, 477 (1936)).  Thus, because the federal proceedings were clearly "prior" to the state action, dismissing the federal claims seems all the more like an unjust abdication of the court's duty to exercise jurisdiction granted.

I dissent from the majority's opinion because it effectively reads diversity jurisdiction out of the interpleader statute whenever a similar action is pending in a state court. As with jurisdiction granted under the diversity statute, once a case is properly commenced in a federal court, the case should stay there unless there is a recognized reason for abstention or transfer. I am disturbed by what I construe as the judicial destruction of a congressionally created federal remedy. In my opinion, allowing courts broad authority to decide when to abstain from exercising jurisdiction clearly granted by Congress is an inappropriate exercise of judicial authority.

I would apply the more narrow Colorado River test here in order to adequately uphold federal jurisdiction and the purposes of the law.[0] If Congress desires federal courts to have broad discretion to abstain from resolving disputes brought under the interpleader statute, then Congress, not this court, should make its desire clear by clarifying the language of the statute.

---

[0] I believe that this court may apply the exceptional circumstances test without remanding the issue to the district court given the adequacy of the record in this case. The Supreme Court has articulated a non-exclusive list of factors relevant to a determination of whether exceptional circumstances exist. That list includes: "the assumption by either court of jurisdiction over a res, the relative convenience of the fora, avoidance of piecemeal litigation, the order in which jurisdiction was obtained by the concurrent fora, whether and to what extent federal law provides the rules of decision on the merits, and the adequacy of state proceedings." Wilton, 115 S.Ct. at 2142. Balancing these factors "heavily weighted in favor of the exercise of jurisdiction," Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983), I would hold that the district court improperly abstained and should have exercised its jurisdiction by completing the adjudication properly commenced in federal court.